Frederick E. and Linda L.
SPECK, Plaintiffs,

v.

UNITED STATES, Defendant.

No. 42–77T.

United States Court of Federal Claims.

March 30, 1993.

Charles L. Abrahams, La Mesa, CA, Atty. of Record, for plaintiffs.

Benjamin C. King, Jr., Claims Court Section, Tax Div., Dept. of Justice, Washington, DC, with whom were Terry T. Coles, Mildred L. Seidman and Asst. Atty. Gen., Attys. of Record, for defendant.

## OPINION

HORN, District Judge.

### BACKGROUND

Plaintiffs, Frederick E. Speck (husband) and Linda L. Speck (wife), seek judgment against the United States to recover for an alleged overpayment of taxes for the 1968, 1971 and 1972 tax years. Plaintiffs were citizens of Canada during these years. Moreover, Frederick E. Speck was a professional hockey player during the tax years at issue in the complaint, 1968, 1971, and 1972, and plaintiff Frederick Speck was present in the United States during 1968, 1971, and 1972 as a non-resident alien, while playing hockey.

The case filed by plaintiffs, Frederick E. and Linda L. Speck, is one of two-hundred and thirty-one (231) related tax refund cases filed on behalf of mostly hockey play-

ers (known as the related hockey player tax refund cases)[1] in the United States Court of Claims and the United States Claims Court, by their counsel, Charles L. Abrahams. Mr. Abrahams filed these cases beginning in 1976, until the most recently filed case was submitted to this court in 1990.[2] Those cases, originally filed in the United States Court of Claims, were transferred to the United States Claims Court in 1982 after the enactment of the Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, 96 Stat. 25, and are now pending in the United States Court of Federal Claims following the name change of the court included in Pub.L. No. 102–572, 106 Stat. 4506 (1992).[3] The Honorable Philip R. Miller, of the United States Court of Claims, and then of the United States Claims Court, presided over these cases until his retirement. During his tenure, one-hundred and ninety-four (194) related cases were filed. Upon Judge Miller's retirement, all of the pending related hockey player tax refund cases were transferred to this judge. Since then, thirty-seven (37) additional hockey player tax refund cases have been filed, bringing the total number of related cases filed to two-hundred and thirty-one (231).

During the time Judge Miller was assigned the related hockey player tax refund cases, he tried to invoke numerous, innovative, albeit unsuccessful, pretrial procedures to simplify the related hockey player tax refund docket and to decide common issues. In order to achieve this objective, Judge Miller, among other methods, attempted to isolate discrete legal issues common to all the cases for initial resolution by a motion for partial summary judgment; however, this motion was not decided until after his retirement. He also allowed the parties to designate test cases to be tried first, rather than to move simultaneously through pretrial discovery and towards trial on all the pending related hockey player tax refund cases.[4]

1. Although a very large percentage of the related cases brought for tax refunds were filed by athletes who participated in competitive hockey, there are a few soccer and football players also included in the docket denominated the hockey player tax refund cases.

2. The court apologizes for the lurid detail of this opinion, which presents relatively straightforward legal issues. Even the rather lengthy recitation which appears in this opinion, however, is an exceedingly abbreviated version of the years of protracted pretrial proceedings. This court feels it is necessary to painstakingly lay out the procedural history of this and the related hockey player tax refund cases for several reasons. In the first place, this is the first trial opinion to be issued in these cases. It is this court's opinion that plaintiffs' counsel, Charles Abrahams, has gone to extreme lengths to avoid taking any of these cases to trial, which accounts in large part for the many years it has taken to complete cases such as that brought by Mr. and Mrs. Speck. The court hopes that in the future, with appropriate recognition of the unique aspects of each case presented, the court will be able to refer to those common elements of the history of these cases. Second, because of the large number of related cases and the extensive record of filings and hearings in these related cases, there have been a number of times when the recollection of the plaintiffs' counsel and of the defendant's counsel have radically differed, especially regarding events which precede this judge's assignment to the cases. Third, the court believes that on a number of occasions, counsel for the plaintiffs may

have attempted to benefit by creating uncertainty and confusion with his continuous references to alleged settlements, which the defendant has clearly indicated were never consummated. The court sincerely hopes that the factual findings in this opinion can form a basis for understanding of the common events which occurred in the past.

3. By enactment of the Court of Federal Claims Technical and Procedural Improvements Act of 1992, Pub.L. No. 102–572, the United States Claims Court was renamed the United States Court of Federal Claims. In accordance with General Order 33 issued by the United States Court of Federal Claims, the court adopted the rules of the United States Claims Court. The substance of the rules of the court, discussed herein, are unaffected by the legislation, other than with respect to the name change of the court and, therefore, the name change of the rules. However, General Order 33 also indicates that if there is a conflict between the new statute and the rules, the statute will control. RUSCC stands for Rules of the United States Claims Court, now the Rules of the United States Court of Federal Claims, which is abbreviated RCFC.

4. Originally, ten (10) cases were identified as the source of representative cases to be tried first. Then, five (5) cases were identified as test cases for trial in Judge Miller's order on November 7, 1979. The five (5) were *Douglas R. Favell, Jr.,* No. 525–76; *Gilles Marotte,* No. 531–76; *Frederick E. & Linda L. Speck,* No. 42–77; *Fran-*

The parties had represented to Judge Miller, and then to this judge, that the income allocation issue regarding the proper sourcing of United States and/or Canadian income foreign income could be resolved in a motion for partial summary judgment. Moreover, because it was a common legal issue present in the majority of the related cases, it was represented by counsel that resolution of this legal issue could eventually dispose of the entire hockey player tax refund docket.[5] After the opinion on the income allocation question was issued by this court (*Favell v. United States*, 16 Cl.Ct. 700 (1989)), *appeal denied*, 22 Cl.Ct. 132 (1990), *mandamus denied*, 949 F.2d 402 (Fed.Cir.1991), however, there still appeared to be no prospect that the related hockey player tax refund cases could be resolved as a group.[6] In fact, even following this court's ruling on the motion for partial summary judgment,

plaintiffs' attorney, Mr. Abrahams, continued to file new, related complaints on behalf of additional hockey player plaintiffs. Mr. Abrahams also continued unilaterally to insist that as a result of proceedings before Judge Miller, and statements by defendant's prior counsel, some or all of the cases remained suspended pending the court's summary judgment decision. In the alternative, plaintiffs' counsel attempted to argue that defendant's prior counsel had agreed to a settlement of the cases which should bind defendant's current counsel.

Although the entire related hockey player tax refund case docket was never formally consolidated, for a time, pretrial activities in all the cases were conducted by grouping the cases together in order to expedite proceedings in such a large number of cases.[7] The pretrial process has

cis W. Speer, No. 43–77; and *Garnet E. Bailey*, No. 122–77.

5. A similar attempt to consolidate cases and resolve common issues was undertaken by a judge of the United States Tax Court to dispose of a related tax cases docket, also filed in that court by counsel, Charles Abrahams on behalf of hockey players. On appeal from a decision of the United States Tax Court in *Stemkowski v. Commissioner*, a hockey player tax case, Judge Oakes of the United States Court of Appeals for the Second Circuit wrote the following:

We say 'supposed' because the parties agreed that this case and *Hanna v. Commissioner* [76 T.C. 252, 1981 WL 11235 (1981)] (T.C. No. 3485–76), which were consolidated for briefing, trial, and opinion, would dispose of 41 other hockey players' cases before the Tax Court. But *Hanna* is currently on appeal to the Fourth Circuit (No. 81–2122), which may take a different view of one or more aspects of the case than we do. It is not clear from the record whether the consolidation agreement was intended to apply only to disposition in the Tax Court, or to proceedings beyond the Tax Court as well. In any event, the Tax Court entered an order suspending decisions in the 41 other cases until the decisions in the instant case and *Hanna* have become final.

*Stemkowski v. Commissioner*, 690 F.2d 40, 42 n. 1 (2d Cir.1982).

6. On November 27, 1990, this court, in another lengthy opinion, 22 Cl.Ct. 132 (1990), had refused to certify an appeal on the income allocation issue because, among other pertinent reasons, the court found that an appeal would (a) violate "the exceptional case" standard, (b) per-

mit what this court believed to be a groundless appeal given previous rulings by at least three other, albeit nonbinding courts, (c) promote piecemeal litigation and (d) not dispose of the main issues surrounding the ultimate individual tax liability of each of the hockey player plaintiffs. An attempt by plaintiffs' counsel to obtain a writ of mandamus from the United States Court of Appeals for the Federal Circuit to disqualify the judge and to direct the trial court to certify an immediate appeal of the April 26, 1989 order of this court on the income allocation issue was also denied on September 20, 1991. *In re Douglas R. Favell, Jr.*, 949 F.2d 402 (Fed.Cir.1991) (order denying writ of mandamus). Moreover, on October 11, 1991, the Court of Appeals for the Federal Circuit denied a motion filed by Mr. Abrahams for reconsideration of the court's order denying the petition for writ of mandamus and for a stay of proceedings in the trial court. *In re Douglas R. Favell, Jr.*, No. 313 (Fed.Cir. Oct. 11, 1991) (order denying motion for stay).

7. The court notes that for administrative purposes, the Clerk's Office of the United States Court of Claims and the United States Claims Court, under the auspices of Judge Miller, and also originally under this judge, used the name and case number of one case, *Favell, et al.*, Case No. 525–76, to refer to the entire hockey player tax refund docket. As it became clear to this judge that the cases could not be resolved by deciding the common issues in the cases, and that each case might require an individual trial, the court ceased to issue court orders with the general designation *Favell, et al.*, Case No. 525–76. This court now captions its orders with the

required an undue amount of the court's time and attention, in large part because the filings by counsel for the plaintiffs were so frequently defective. The jurisdictional defects were addressed in a number of orders issued by this court, as described below. Many of the original petitions filed by plaintiffs' counsel, Charles Abrahams, contained jurisdictional defects and/or factual errors and many of the plaintiffs' pretrial filings were rejected by the court for failure to comply with the court's published rules. Moreover, plaintiffs' filings often were filed together with extraneous material, not relevant to the precise issue under consideration at the time.

Pursuant to an order of this court dated February 22, 1991, captioned for administrative purposes, *Douglas R. Favell, et al. v. United States,* fifteen (15) of the related cases and portions of other cases were dismissed for jurisdictional defects, *Douglas R. Favell, et al. v. United States,* 22 Cl.Ct. 571 (1991). Subsequently, plaintiff Peter Stemkowski, Case Nos. 262–77 and 482–86, filed a pleading in this court on October 4, 1990, which suggested to the court that he, and perhaps other plaintiffs, might not be satisfied with the conduct of their counsel, Charles L. Abrahams. Also, through filings with the court and testimony offered at hearings in a number of the related cases, the court became aware that at least some of the plaintiffs had received no communication from their counsel, Charles L. Abrahams, for many years and that others did not even realize that they

were plaintiffs in an action in this court. Therefore, on February 25, 1991, the court issued an order requiring all the remaining plaintiffs in the related hockey player tax refund cases to file with the court, on or before June 28, 1991, one of two Notices appended to the court's order updating the court on the status of their cases: Notice A was to be filed if a plaintiff desired to continue prosecuting his/her case, and Notice B was to be filed if the plaintiff requested not to proceed. After the due date had passed, on October 2, 1991, this court issued an order dismissing with prejudice eight (8) of the related cases in which the plaintiffs had filed a Notice B. Also on October 2, 1991, this court issued an order dismissing eighty-eight (88) cases, without prejudice, for failure to prosecute, in which the plaintiffs failed to respond to the court's order and did not return either Notice A or Notice B by the June 28, 1991 deadline. However, the court allowed the filing of thirty-two (32) Notices A and B received as late as September 24, 1991, pursuant to a court order dated October 1, 1991, and an order issued on October 23, 1991, which reinstated two (2) cases.

In an order issued January 15, 1992, this court dismissed two (2) additional cases at the request of the plaintiffs. On February 11, 1992, the court dismissed two (2) cases for lack of jurisdiction, and also dismissed portions of five (5) other cases. By four separate orders, dated March 9, 1992, the court dismissed four (4) cases without prejudice for failure to appear at trial and

specific names and case numbers of individual plaintiffs, even in orders which affect a number of parties. However, pursuant to this opinion, because of the decision by the Clerk's Office in the 1970's and 1980's to designate all the cases by the *Favell* name and docket number, and also due to confusion resulting from the failure of the transcript reporting company to differentiate the caption of the transcripts between individual case names and numbers, and to use the *Favell* designation and docket number for all the cases, this court consolidates the record, including the transcripts and filings in the related hockey player tax refund cases. However, the cases themselves are not consolidated because each of the cases presents different tax refund fact patterns, which may have to be resolved in separate proceedings. The entire docket of the cases will continue to be referred

to as the related hockey player tax refund cases, but each individual case will continue to be referred to by the court with its individual case name and docket number. Reference to the record in this and future orders and opinions of the court for any of the cases, however, may be to any item included in the court's docketed records in *Favell, et al.,* Case No. 525–76, or in any of the related hockey player tax refund cases. In sum, should any opinion or order issued by this court be appealed, or referred to by any other tribunal, the record will be deemed to consist of the files in the Clerk's Office in all the related hockey player tax refund cases. However, as indicated, each case, except if brought by husband and wife jointly will continue to be treated individually and the opportunity for trial will be afforded to each plaintiff.

failure to prosecute.[8] On March 31, 1992, in a housekeeping order, the court formally dismissed the complaint in one (1) case in which each of the claims had been found jurisdictionally defective in its earlier order of February 22, 1992, but the case had not been closed by the court's Clerk's Office. On April 13, 1992, the court dismissed the case of one (1) plaintiff who appeared at trial, but at that time stated to the court that he wanted to voluntarily dismiss his case. On April 30, 1992, two (2) cases were dismissed at the request of the plaintiffs during their pretrial conferences. In an order dated May 29, 1992, the court dismissed, for failure to prosecute, the case of a plaintiff who failed to present himself for trial when the case was called. Also, on May 29, 1992, the court dismissed three (3) cases brought by married plaintiffs who asked the court to dismiss their claims midway through their trial. A June 1, 1992 order dismissed two cases of married plaintiffs who requested that their cases be dismissed after the completion of their trial. By order dated June 30, 1992, the court dismissed a case in which the plaintiff husband, immediately prior to the commencement of trial at which plaintiff wife failed to appear, requested from the witness stand that his claims be dismissed, in part because he did not possess the documents necessary to substantiate his claims for refund. Also, on June 30, 1992, in another case, the court granted defendant's motion to dismiss for lack of jurisdiction. On June 30, 1992, the court dismissed the case of a plaintiff who indicated on the record that he wanted to dismiss his action. On July 10, 1992, the court dismissed a case at the request of another plaintiff. On July 30, 1992, the court dismissed the case of another plaintiff who also requested that his case be dismissed. On July 31, 1992, judgment was entered by this court that a case be dismissed, with prejudice, pursuant to a stipulation for dismissal filed on July 22, 1992. Consequently, at the present time,

ninety-eight (98) related hockey player tax refund cases, including the above-captioned case, remain pending before this court.

Despite representations by the Department of Justice that the remaining related hockey player tax refund cases could not be settled, plaintiffs' counsel, nonetheless, has persisted in his position that these cases can be resolved as a unit through settlement or by certification for appeal to the United States Court of Appeals for the Federal Circuit of the income allocation issue decided in this court's opinion granting defendant's cross motion for partial summary judgment.[9] The United States Department of Justice has consistently rejected the notion that any final settlement was ever reached by the parties in these cases, and repeatedly states that whatever settlement negotiations may have taken place did not conclude in a signed settlement or court ordered resolution of the cases. Moreover, the defendant has rejected any possible settlement of the cases at this time.

On March 21, 1991, this court held a status conference in the related hockey player tax refund case docket, including the instant *Speck* case. At this conference, the court instructed the parties that any supposed suspensions which might have existed in the minds of either counsel, regarding any of the hockey player tax refund cases included in the captioned title, *Favell, et al.*, were lifted. Given the failure to dispose of the cases in an alternative fashion, and absent any prospect for settlement, the court felt that the remaining cases should be scheduled for trial as soon as possible on the factual issues unique to each taxpayer. These disparate factual issues, including residency, domicile, hockey playing time and location, and claimed deductions, appeared to the court not to be amenable to further resolution by dispositive motion or settlement. A number of cases, including the *Speck* case, were,

---

8. The plaintiffs were given until March 23, 1992 to make a motion for the court to reopen their cases. These cases were subsequently dismissed, with prejudice, two in April, 1992 and two in May, 1992.

9. As indicated above, plaintiffs' argument that certification of the income allocation issue was appropriate was rejected by this court in *Douglas R. Favell v. United States*, 22 Cl.Ct. 132.

therefore, designated for trial by this judge as part of the Group I cases to be set for trial in the near future.

In an order issued on March 22, 1991, memorializing the substance of the status conference on the preceding day, the court ordered:

1. On or before April 15, 1991, plaintiffs' counsel, Charles L. Abrahams, Esq., in accordance with the Court's Order of February 25, 1991, will serve copies of the Order and attached Notices A & B on the individual plaintiffs. Mr. Abrahams will send the copies of the Order and Notices A & B either by registered return receipt requested or certified return receipt requested mail.... [10]

2. On or before May 15, 1991, for those cases in which plaintiffs are now deceased ... plaintiffs' counsel will file motions for substitution of a plaintiff(s)' estate accompanied by a memorandum of law indicating why the claims of such plaintiffs should not be dismissed in cases where the motion for substitution is late pursuant to the Rules of the United States Claims Court (RUSCC). All future motions of substitution shall be filed by plaintiffs' attorney in a timely fashion....

3. On or before March 28, 1991, if plaintiff or defendant differs with the Court's list of plaintiffs proffered to the parties at the March 21, 1991 status conference, the parties shall so inform the Court in writing.[11]

4. On or before April 4, 1991, plaintiffs' counsel will file a notice to inform the Court and the defendant regarding which plaintiffs in Group I wish to continue prosecuting their cases and their choice of representation.

5. On or before April 26, 1991, defendant will serve plaintiffs' attorney with discovery requests pertaining to the plaintiffs in Group I.

6. On or before May 31, 1991, plaintiffs' attorney will file responses to defendant's discovery requests for the plaintiffs in Group I.

7. On or before April 26, 1991, plaintiffs' attorney shall file a notice to inform the Court and defendant as to which plaintiffs in Group II wish to continue prosecuting their cases and their choice of representation.

8. On or before May 18, 1991, defendant will serve plaintiffs' attorney with discovery requests pertaining to the plaintiffs in Group II.

9. On or before July 5, 1991, plaintiffs' attorney will file responses to defendant's discovery requests for the plaintiffs in Group II.

10. On June 20, 1991, at 10:00 A.M. EDT, the Court will hold a status conference in this case. ...

On April 4, 1991, plaintiff's counsel filed a notice informing the court that Frederick Speck wished to pursue his case. In an abundance of caution, however, given the history of these cases, the court, by an order issued April 11, 1991, stated that the compliance by plaintiffs' counsel with the order of March 21, 1991 did not relieve counsel of the responsibility to file a Notice A or B form personally signed by plaintiffs, as mandated in the court's order of February 15, 1991. Therefore, on May 3, 1991, plaintiffs Frederick and Linda Speck each filed with the court a Notice A in which each indicated that they wished to continue the prosecution of their case and to be represented by Charles Abrahams.

Plaintiffs' counsel, Charles L. Abrahams, who has held himself out as representing all of the 231 related hockey player plaintiffs in this court, has employed various

---

**10.** Unfortunately, based on Mr. Abrahams' answers at the status conference, it became evident that he had not complied with the February 25, 1991 order of the court to provide to his clients a copy of Notice A and Notice B so that they could indicate their intentions regarding continuation of their cases.

**11.** Unfortunately, it was also clear that Mr. Abrahams did not have a complete list of plaintiffs or addresses for all the plaintiffs for whom he had filed petitions in this court. In fact, based on the testimony of a number of hockey player plaintiffs at pretrial hearings, it appeared that not all the plaintiffs were even aware that a lawsuit had been filed in this court on their behalf.

methods to delay pretrial proceedings in those cases, including the above-captioned *Speck* case, in an effort to avoid trial in all of the related hockey player tax refund cases. He has filed repetitive motions, including numerous motions to delay discovery and to postpone trial.[12] Plaintiffs' counsel, Charles Abrahams, also has moved to have defendant's counsel disqualified on the related hockey player tax refund proceedings, and requested sanctions against defendant's counsel. Mr. Abrahams even deliberately refused to appear at a fact finding hearing scheduled by the court in *Tannahill v. United States*, Case No. 147–77, regarding the motion filed by him to disqualify defendant's counsel. Mr. Abrahams also moved to disqualify the entire Department of Justice from representing the United States in the related hockey player tax refund proceedings. The request to have defendant's counsel disqualified was denied by this court in a lengthy opinion captioned: *Tannahill v. United States*, 25 Cl.Ct. 149 (1992). The request to have the entire Department of Justice disqualified was denied by the court in another lengthy opinion captioned *Douglas R. Favell, Jr., et al. v. United States and related cases*, and *Donald Tannahill v. United States*, 25 Cl.Ct. 149 (1992).[13] From time to time, Mr. Abrahams has accused the court of ignoring statements made by him and pleadings submitted by him, of cutting him off and of not allowing him an opportunity to express himself, of setting unreasonable deadlines and of generally overtaxing his resources. The record demonstrates, however, that the court has been more than lenient in its enforcement of the rules of this court, by granting Mr. Abrahams repeated extensions of time and by listening to and reading his repetitive, and often non-responsive, answers to the court's inquiries. Mr. Abrahams also

has failed repeatedly to keep his client's informed of the proceedings in this court. A number of the plaintiffs appearing for trial have indicated gaps of ten (10) to fifteen (15) years, or more, between contacts from their counsel. Moreover, for a number of the plaintiffs, the first notice of their scheduled trial has been receipt of the defendant's subpoena to appear for trial. In sum, the court has indulged Mr. Abrahams on many occasions so that Mr. Abrahams' clients would not be penalized by his repeated failure to conform to court rules and to meet court ordered requirements.

In the case at bar, and in the other Group I cases, plaintiffs' counsel, Charles Abrahams, has repeatedly failed to meet deadlines set by the court for the exchange of documents and information between the parties in preparation for trial. To no avail, this court, repeatedly, has exhorted plaintiffs' counsel to meet court ordered deadlines, to turn over documents, to identify witnesses and to work with defendant's counsel. On June 19, 1991, however, the defendant, needing the pretrial material to prepare for the upcoming trials, also tired of the continuous excuses by plaintiffs' counsel regarding his failure to comply with court orders. Defendant, therefore, filed a Motion to Compel Answers to Interrogatories and Responses to Requests for Production. The defendant asserted that despite the court order at the March 21, 1991 status conference, by which plaintiff was required to provide the requested information and documents on or before May 31, 1991, plaintiffs had failed to provide defendant with complete answers to defendant's second set of interrogatories, and, furthermore, had failed to respond by way of objection or otherwise to defendant's request for production of docu-

---

12. This court notes that Charles L. Abrahams also filed over two hundred cases similar to the ones at bar to dispute tax liability in the United States Tax Court and appears to have employed a number of the same delaying tactics and unfounded legal arguments in those cases. *See also Stemkowski v. Commissioner*, 82 T.C. 854, 1984 WL 15579 (1984); *John J. Hanna v. Commissioner*, T.C.Memo 1992–360, 63 T.C.M. (CCH) 3178, 1992 WL 141006 (1992).

13. Through an oversight in the Clerk's Office, this opinion was not sent for publication in 1992 when it was issued. The omission, however, has been corrected and the opinion, which currently is available from the court, has been now sent out for publication, and should be appearing in the published reporters shortly.

ments. Thereafter, on June 17, 1991, defendant's counsel contacted plaintiffs' counsel to discuss the latter's failure to comply with the court order and the rules of this court. According to defendant, counsel for plaintiffs, Charles Abrahams, indicated that he was sending some documents to defendant, but was unable to provide all the documents identified and still could not provide full identification or the addresses and phone numbers of the proposed witnesses to be relied on by plaintiffs at trial. On June 24, 1991, defendant filed a Motion for Leave to Supplement Defendant's Motion to Compel Answers to Interrogatories and Responses to Requests for Production, in which defendant provided the court with copies of Defendant's First Set of Interrogatories, the plaintiffs' answers thereto, and the Defendant's First Requests for Production. On July 15, 1991, however, plaintiff filed an Opposition to Defendant's Motion to Compel Answers to Interrogatories and Responses to Request for Production and for Leave to Supplement the Motion. In this document, plaintiff asserted that defendant's discovery requests were burdensome and required hours of effort to locate from banks and other institutions in addition to witnesses to testify to events that had occurred over twenty years ago.[14] In this filing, plaintiff appears to erroneously equate additional discovery with exchange and the turn over to defendant's counsel of pretrial exhibits. Plaintiffs' counsel asserts that on June 27, 1991, the defendant had declared that they were "willing to waive any discovery in *all* of these cases," (emphasis in original) as a result, according to Mr. Abrahams, the outstanding orders to exchange pretrial exhibits should not be enforced.

On July 19, 1991, the court held another status conference to attempt, once again, to resolve the outstanding discovery disputes.[15] At the status conference, Mr. Abrahams agreed to waive further new discovery in the Group I cases. Notwithstanding the waiver of further discovery, the plaintiffs remained responsible to produce to defendant copies of the documentary evidence which plaintiffs proposed to use at the upcoming trials, and to provide an updated witness list to defendant. The Department of Justice also continued to insist on the appearance at trial of live witnesses, so that they would be available for cross-examination by the defendant, and observation by the court. The defendant refused to stipulate to the use of deposition or transcript testimony. Given the peculiarity of each individual's tax situation, the variety of the deductions claimed by each of the hockey players who had filed cases in this court, the numerous questions raised in earlier filings with this court regarding the authenticity of signatures, and the apparent discrepancies between copies of tax returns and 843 claim forms attached to the petitions filed with this court and those included in subsequently filed documents, the court agreed with the defendant that the parties and the court should be in a position to assess the credibility of the witnesses during testimony.

On November 6, 1991, the parties finally were able to file with the court a joint exhibit list in accordance with the court's

---

**14.** On numerous occasions throughout the proceedings, it has become clear that plaintiffs' counsel, Charles L. Abrahams, has either kept inadequate records, or is simply unable to locate those records he did keep, or both. Moreover, it is also evident from the testimony of the witnesses that Mr. Abrahams did not clearly instruct his clients to maintain adequate records to substantiate their refund claims in the cases filed in this court.

**15.** As early as March 27, 1978, Judge Miller to whom this case had been earlier assigned had issued the first in a series of pretrial orders in the above-captioned case by which plaintiffs were to furnish to the defendant's attorney and the trial judge, on or before May 28, 1978, "[a] list accurately describing the documents that are relied on and are to be offered in evidence.... A statement of the material matters of fact as to which it is believed that there is no substantial controversy between the parties or which have been agreed to by the parties.... A memorandum of contentions of fact...." Although Judge Miller's order was followed in the intervening years by additional court orders and by subpoenas issued by the defendant, the gist of the requests has remained consistent with the first order, but has never been fully complied with by the plaintiffs.

October 23, 1991 order and RUSCC, Appendix G, para. 13. On November 8, 1991, however, the parties stated that they were unable to agree to a submission of joint statement of issues of fact and law. They, therefore, submitted separate filings. On November 8, 1991, defendant filed a Memorandum of Contentions of Fact and Law. On the same date, the parties also filed with the court separate exhibit and witness lists. The witness list filed with the court for plaintiffs by their counsel, Charles L. Abrahams, listed nineteen (19) separate witnesses. In the submission to the court titled "Plaintiffs' Witness List," counsel stated:

> Plaintiffs, FREDERICK E. AND LINDA L. SPECK, in accordance with RUSCC, Appendix G, para. 10(b), and this Court's order of October 23, 1991, hereby gives notice that it intends to call the following witnesses at the trial in this case. Addresses will be provided at a later date. 1. Gerry Gray, 2. Edward Hatoum, 3. Craig Reithmuth, 4. James Niekamp, 5. Ross Perkins, 6. Gerry Strong, 7. Pete Mahovlich, 8. Donald McCloud, 9. Brian McDonnell, 10. Earl Heiskala, 11. Murray Hall, 12. Gary Venerruzzo, 13. Ted McCaskill, 14. Ron Garwasiuk, 15. Joe Szura, 16. Steve Cardwell, 17. Mike McMahon, 18. Norman Johnson, 19. Frederick E. Speck.
>
> Each of the above witnesses will testify as to the away-from-home expenses incurred and spent by the Plaintiff, which includes road trip expenses and other employee expenses.

At a conference on November 13, 1991, the court realized that Mr. Abrahams still did not have current addresses for all the individuals he had listed as witnesses for the plaintiff in the *Speck* case, and for other Group I cases, all scheduled for trial in less than one month.[16] Moreover, Mr. Abrahams still had failed to exchange exhibits with defendant's counsel, as required by Appendix G to the rules of this court.

Even those exhibits provided by Mr. Abrahams, were improperly grouped, with multiple documents included under one exhibit number. In fact, at the conference, Mr. Abrahams, in response to the court's question as to whether he had failed to comply with Appendix G, said "[t]hat's right I guess I should have submitted the exhibits to her [defendant's counsel] preliminarily. I'm not saying that I shouldn't have...."

Thereafter, counsel for the defendant notified the court that plaintiffs' counsel continued to ignore the court's order to provide the documents in question to the defendant on or before November 19, 1991. Thus, on November 13, 1991, at a status conference, the court again ordered the plaintiffs' counsel to send copies of plaintiffs exhibits to defendant on or before November 19, 1991, which direction the court confirmed in a written order issued on November 14, 1991. The court further ordered that if the plaintiff again failed to supply the documents in question, another status conference would be held on November 20, 1991, but that, in any event, that the trial would proceed as scheduled. At the conference on November 20, 1991, plaintiffs' counsel, Charles Abrahams, indicated that he had sent the documents in question via express mail and that he was unaware that the Justice Department had not received the documents. Even when the documents were received, however, consistent with his pattern of turning over information in piecemeal fashion, plaintiffs' counsel failed to provide a final exhibit list to defendant for use at trial.

On November 18, 1991, plaintiffs' counsel attempted to file an amended witness list with the court which, however, was returned unfiled for failure to include proof of service as required by the rules of this court. Mr. Abrahams stated at a pretrial conference on November 25, 1991, that: "I believe the witness list is the same [as the one previously filed], except that there are phone numbers and addresses on them."

---

16. As the trial date approached, the court held an unusual additionally large number of status and pretrial conferences, hoping to force plaintiffs' counsel to comply with the court's orders and to persuade Mr. Abrahams that the court was serious about going forward with the trials as scheduled, beginning on December 2, 1991. The additional pretrial conferences were held on November 13, 1991, November 20, 1991 and November 25, 1991.

Plaintiffs' counsel, therefore, still maintained as of November 25, 1991, that plaintiffs would call nineteen (19) witnesses in the *Speck* case.[17] Neither the defendant nor the court were informed prior to the court's arrival in Boston, Massachusetts for the Group I trials, including the above-captioned case, that of the nineteen witnesses listed on plaintiffs' filing, only one, Frederick Speck, would appear at the *Speck* trial to testify, and that even plaintiff Linda Speck would not appear or testify.

At the final pretrial conference conducted on November 25, 1991, defendant indicated that they had finally received some more of plaintiffs' documents. However, defendant pointed out that rather than satisfying the requirement of Rule 1006 of the Federal Rules of Evidence, entitling defendant to the production of actual documents, plaintiffs' counsel had prepared and provided information summaries instead. Moreover, defendant noted that the summary documents provided appear to "have nothing to do with particular plaintiffs because the names don't appear on them." Rather, the summaries referred to a large number of other hockey player plaintiffs. To the extent that counsel for the plaintiffs had failed to provide actual documents to be used in the *Speck* trial, defendant further pointed out that none of the witnesses listed would be able to authenticate the summaries. Finally, on November 27, 1991, immediately prior to the commencement of trial, the parties filed with the court a stipulation, agreeing that those exhibits included in the limited joint exhibit list filed on November 6, 1991, not, however, including plaintiffs' other exhibits, are true and accurate copies of the originals of such documents and, thus, may be admitted into evidence.

Despite numerous missed deadlines and additional opportunities to provide pretrial filings, on December 2, 1991, the first day of the Group I hockey player tax refund trials, plaintiffs' counsel, Charles Abrahams, offered evidence for use at the

Group I trials which had not been previously exchanged with the defendant or identified for the court. Not only were the new exhibits a surprise, but, even at such a late date, they still were offered in a disorganized, improperly numbered fashion, not appropriate for use during trial. Because the court has been concerned throughout all the related hockey player tax refund cases that the individual plaintiffs' claims each should receive a fair and adequate review, and that the cases should be decided on the merits, despite the mistakes of plaintiffs' counsel, the court, nonetheless, granted plaintiffs' request to introduce the evidence, produced in the eleventh hour, provided the exhibits were properly organized. The court reserved to counsel for the defendant, however, the right to raise proper evidentiary objections on each document proposed for introduction.

The disposition of the hockey player tax refund cases has been delayed by the complexity of the issues, the large number of plaintiffs, the protracted pretrial proceedings, the plethora of supporting documents filed in the cases, the need for successive judges to become familiar with the filing, the sporadic compliance of plaintiffs' counsel with pretrial orders to exchange exhibits and identify witnesses, and at least twenty-eight requests, principally by the plaintiff, for extensions of time to file motions and to prepare for the trials. The Group I cases were finally brought to trial during a one week period beginning on December 2, 1991 in Boston, Massachusetts. On December 5, 1991, the above-captioned case of *Frederick E. & Linda L. Speck* came to trial. Although the case filed in this court is captioned Frederick E. & Linda L. Speck, the plaintiff wife did not attend the trial. Indeed, the only witness to testify in the case was plaintiff Frederick E. Speck.

The trial transcript and plaintiffs' post-trial brief reflect Mr. Speck's presence in the United States during the tax years in question on an H–2 visa. During those

---

17. Strangely enough, plaintiffs' counsel also attempted to file yet another amended witness list on December 18, 1991, which was rejected with the following annotation: "This document was filed after the trial was held and contains names of witnesses who did not testify at trial."

years, Frederick Speck was present in the United States as a non-resident alien while playing professional hockey. Plaintiffs seek a refund of Internal Revenue taxes based on alleged overpayment of income taxes for the plaintiffs' 1968, 1971 and 1972 tax years. In their petition, plaintiffs Frederick E. Speck and Linda L. Speck assert that they filed a joint federal income tax return, Form 1040NR, for the calendar year 1968 with the United States Internal Revenue Service (I.R.S.) Office of International Operations and paid the sum of $1,337.00 in income taxes reported due on said return. On April 15, 1972, plaintiff Frederick E. Speck individually filed a return Form 1040NR for the year 1971 with the I.R.S. Office of International Operations, and paid the sum of $627.00 in income taxes reported due on said return. On April 15, 1973, plaintiffs jointly filed a Form 1040 return for the year 1972 with the I.R.S. office in Ogden, Utah, and paid the sum of $3,218.00 in income taxes reported due on said return.

Thereafter, on April 18, 1972, plaintiff Frederick E. Speck individually filed with the I.R.S. Office of International Operations a Claim for Refund Form 843 in the amount of $1,063.00 paid by plaintiffs with respect to the year 1968. On April 15, 1975, plaintiff Frederick E. Speck individually filed with the I.R.S. Office of International Operations a Claim for Refund Form 843 in the amount of $2,185.00 on his 1971 return. On April 15, 1976, plaintiffs filed jointly with the I.R.S. Office of International Operations a Claim for Refund Form 843 in the amount of $915.00 on their 1972 return.

On January 27, 1975, the I.R.S. mailed to the plaintiff Frederick E. Speck, c/o Charles L. Abrahams, by certified mail, a Notice of Disallowance of their claim for the 1968 tax year. On February 7, 1975, the I.R.S. mailed to the plaintiff Frederick E. Speck, c/o Charles L. Abrahams, by certified mail, a Notice of Deficiency of the claim for the 1971 tax year. In their petition, plaintiffs claimed that no certified Notice of Disallowance had been received for tax year 1972 at the time of the filing of the plaintiffs' petition on January 21, 1977,

nor is one contained in the record currently before the court.

The *Speck* case has been made much more difficult because of the confusion created by plaintiffs in their choices of how they filed joint or individual, resident or non-resident tax returns, and individual or joint Form 843 claims, and the confusion has been compounded by the incorrect references to such filings in the petition and in subsequent filings by the plaintiffs in this court. Moreover, there is a variety of different signatures shown on each of these documents. The rambling, and at times confusing, petition filed in the United States Court of Claims, which initiated the case, captioned "Frederick E. and Linda L. Speck, Plaintiffs," was signed by "Charles L. Abrahams Attorney for Plaintiffs." The supporting documents filed with this court, and included as attachments to plaintiffs' petitions for the relevant tax years, 1968, 1971, 1972, and included in the joint exhibits, bear differing signatures. In fact, in a number of instances, the copy of the tax return filed and the Form 843 claim attached by plaintiffs' attorney, Charles Abrahams, to the petition, and then included in the joint exhibits admitted into the trial record do not correspond. The 1968 tax return as attached to the petition, and incorporated in the trial record as Joint Exhibit 2, bears no signature, but on the line marked "Signature of preparer other than taxpayer," their is a stamped entry: "Fritz Bookkeeping and Tax Service." The Form 843 claims for 1968, identical copies of which are appended to the petition and included in Joint Exhibit 5, bear only the signature of Frederick Speck, despite the execution on February 25, 1972 of a facially valid power of attorney for the 1968, 1969 and 1972 tax years between plaintiff, Frederick Speck and his counsel Charles Abrahams. The 1971 tax return appended to the petition bears no signatures. The 1971 tax return admitted into the record as Joint Exhibit 3 appears to bear the signature of Frederick Speck as taxpayer, although the poor quality of the copy of the document, as filed with this court, precludes certain identification of the signa-

ture. The document, however, does clearly show the signature of Charles Abrahams as tax preparer. The Form 843 claim for the 1971 tax year as appended to plaintiff's petition and included in Joint Exhibit 7, is signed: "Frederick Speck by Charles L. Abrahams." The 1972 tax return appended to plaintiffs' petition bears no signature. The 1972 tax return marked as Joint Exhibit 4, however, is signed by both Frederick and Linda Speck, the taxpayers, as well as by Charles Abrahams as tax preparer. The Form 843 claim for 1972 appears to be a copy of the same document signed: "Charles L. Abrahams for Frederick E. and Linda L. Speck."

Following the trial held on December 5, 1991, defendant filed a post-trial memorandum on January 31, 1992. Plaintiffs filed a post-trial memorandum on February 20, 1992. The parties filed response briefs, the defendant on February 20, 1992, and the plaintiffs, out of time, by permission of the court, on April 23, 1992. On October 9, 1992, this court held a status conference at which the court requested further clarification regarding the type of tax return filed by the plaintiffs in the years at issue. The court ordered the defendant to file a clarification on or before October 16, 1992 and the plaintiffs to respond on or before October 23, 1992. Neither plaintiffs nor defendant had described the type of return in their papers filed with this court properly. At the court's request, defendant filed a response to the court's questions regarding the type of return filed with the I.R.S. on October 15, 1992, to attempt to clarify the nature of the administrative filings. Defendant's most recent brief filed in this court, however, only addresses the error on pages 13 and 14 of defendant's earlier brief, but fails to address the same confusion contained on pages 27 and 28 of defendant's earlier brief. Plaintiffs, however, have been unclear on this issue, filed their original returns incorrectly in 1968 and 1972, continued to include mistakes in the relevant Form 843 claims for refunds, and failed to file a clarification by the October 23, 1992 date set by the court.

In order to set the record straight, the court offers the following chart summarizing the administrative filings with the I.R.S.: [18]

| | 1968 | 1971 | 1972 |
|---|---|---|---|
| Tax Return Filed | 1040NR filed jointly by Frederick E. & Linda L. Speck | 1040NR filed by Frederick E. Speck individually [19] | 1040 filed jointly by Frederick E. & Linda L. Speck |
| Form 843 | Form 843 filed by Frederick E. Speck individually | Form 843 filed by Frederick E. Speck individually | Form 843 filed jointly by Frederick E. & Linda L. Speck |

### DISCUSSION

Plaintiffs, Frederick E. and Linda L. Speck, allege in their complaint that they overpaid their taxes for 1968, 1971 and 1972 for the following three reasons. First, plaintiffs allege that they are entitled

**18.** In the petition filed by plaintiffs' counsel, Charles L. Abrahams, counsel failed to make any differentiations between the type of returns filed or the individual or joint filing status. In the petition, Mr. Abrahams indicated that for 1968 "Plaintiffs filed their Individual Federal Income Tax Return" and "Plaintiffs filed with the IRS, Office of International Operations a Claim for Refund Form 843." For 1971, plaintiffs' counsel stated in the petition "Plaintiffs filed a return for the year 1971, with IRS, Office of International Operations" and "Plaintiffs filed with the IRS, Office of International Operations, a 'claim' " and for 1972, plaintiffs' counsel stated in the petition "Plaintiffs filed their return for the year 1972, with the IRS, Ogden, Utah."

**19.** In its Form 843 claim for the tax year 1971, plaintiffs incorrectly stated that "[t]axpayer erroneously filed a Form 1040 instead of a Form 1040 NR," when in fact the original tax return for 1971 indeed was filed as a 1040NR.

to certain business and itemized personal deductions, pursuant to 26 U.S.C. §§ 161–165 (1964).[20] In their post-trial brief, plaintiffs' counsel, Charles Abrahams, included a chart which alleged the following business and personal deductions as at issue:

| | 1968 | 1971 | 1972 |
|---|---|---|---|
| Tax Preparation | 45.00 | 45.00 | 135.00 |
| Hockey Association Dues | 125.00 | 175.00 | |
| State Disability | 74.00 | 74.00 | 80.00 |
| Trade Publications | 60.00 | 72.00 | 75.00 |
| Home T.V./Telephone | 73.00 | 82.00 | 95.00 |
| Promotional Expense | 50.00 | 265.00 | 76.00 |
| Conditioning Expenses | 110.00 | | |
| Sales Tax | 46.00 | 361.00 | 269.00 |
| Interest | | | 453.00 |
| Medical | | | 150.00 |
| Trainer Fees | | 50.00 | 90.00 |
| Hairstyle Expenses (in excess of $2.50) | | | 24.00 |
| Entertainment | | | 243.00 |
| Golf Shoes | | 150.00 | 90.00 |
| Golf Balls | | 80.00 | |
| Green Fees | | 120.00 | |
| Sweatsuit | | 25.00 | 20.00 |
| Swim suit | | 5.00 | 10.00 |
| Running Shoes | | 9.00 | |
| Tennis Balls | | 20.00 | 16.00 |
| Tennis Shoes | | 30.00 | 22.00 |
| Gas Tax | 30.00 | | 77.00 |
| Handballs | | 10.00 | |
| Bowling | | 10.00 | |
| Therapeutic Treatment | | 50.00 | |
| Health Club Membership | | 225.00 | 150.00 |
| Golf Clubs | | 50.00 | 138.00 |
| Tennis Racquet | | 8.00 | 15.00 |
| State Income Tax | | 183.00 | 552.00 |
| Moving Expense | 40.00 | | 350.00 |
| Real Estate Tax | | | 551.00 |
| Personal Property (Auto) | | | 70.00 |
| Ice Rental | | | 50.00 |
| Negotiations Fee | | | 1,100.00 |

Second, plaintiffs allege that they may deduct certain charitable contributions from their income, pursuant to 26 U.S.C. § 170 (1964),[21] in the amounts of $100.00 for the 1968 tax year, $64.00 for the 1971 tax year and $164.00 for the 1972 tax years. Third, plaintiffs allege that, because they were non-resident aliens at the time of filing the tax return at issue, they are entitled to exclude from their United States gross income certain foreign income for the 1968, 1971 and 1972 tax years. Plaintiffs also ask for interest as provided by law, costs and such other and further relief as the court may deem just and proper.

The defendant contends that plaintiffs are not entitled to any of the deductions claimed, and that plaintiffs are not entitled to exclude from their United States gross

20. The text of this provision is identical to the 1970 version of the official code applicable to the 1971 and 1972 tax years.

21. The text of this provision is identical to the 1970 version of the official code applicable to the 1971 and 1972 tax years.

income any portion of the compensation Mr. Speck received from his United States hockey team employer. Moreover, the defendant asserts that the government is entitled to judgment even if the court were to find that plaintiffs are entitled to the deductions or exclusions claimed because the government has asserted offsets to the plaintiffs' claims of overpayment. Defendant claims that plaintiffs incorrectly filed joint returns, even though as non-resident aliens in 1972, the plaintiffs were not entitled to file a joint return and benefit from the lower joint return tax rate. 26 U.S.C. § 6013(a)(1) (1970). Defendant asserts that there is an underpayment of taxes for each tax year due to the disallowance of deductions claimed on plaintiffs' original returns and recalculation of the tax liability for any year in which plaintiffs filed their tax return using the wrong tax rate. Therefore, defendant alleges that plaintiffs' underpayment of taxes offsets any refund to which the plaintiffs might otherwise be entitled.

### Jurisdiction

■ In order to vest jurisdiction in the United States Court of Federal Claims, a plaintiff must first have filed an administrative claim for refund with the I.R.S., either on its original tax return or on a Standard Form 843 claim, which specifically lists the deductions claimed. The net amount of alleged overpayment must also be calculated and entered on the tax return or Form 843. The applicable I.R.C. section states:

§ 7422. Civil actions for refund.

(a) No suit prior to filing claim for refund.

No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has

been duly filed with the Secretary or his delegate, according to the provisions of law in that regard, and the regulations of the Secretary or his delegate established in pursuance thereof.

26 U.S.C. § 7422 (1964).[22]

The Supreme Court has construed this provision and held:

The filing of a claim or demand as a prerequisite to a suit to recover taxes paid is a familiar provision of the revenue laws, compliance with which may be insisted upon by the defendant, whether the collector or the United States. *Tucker v. Alexander*, 275 U.S. 228 [48 S.Ct. 45, 72 L.Ed. 253 (1927) ]; *Maryland Casualty Co. v. United States*, 251 U.S. 342, 353, 354 [40 S.Ct. 155, 159, 160, 64 L.Ed. 297 (1920) ]; *Kings County Savings Institution v. Blair*, 116 U.S. 200 [6 S.Ct. 353, 29 L.Ed. 657 (1886) ]; *Nichols v. United States* [74 U.S.], 7 Wall. 122, 130 [19 L.Ed. 125 (1868) ].

One object of such requirement is to advise the appropriate officials of the demands or claims intended to be asserted, so as to insure an orderly administration of the revenue, *Nichols v. United States, supra* [74 U.S. (7 Wall.) ], p. 130, a purpose not accomplished with respect to the present demand by the bare declaration in respondent's claim that it was filed 'to protect all possible legal rights of the taxpayer.' The claim for refund, which § 1318 [a predecessor statute to 26 U.S.C. § 7422] makes perquisite to suit, obviously relates to the claim which may be asserted by the suit. Hence, quite apart from the provisions of the Regulation, the statute is not satisfied by the filing of a paper which gives no notice of the amount or nature of the claim for which the suit is brought, and refers to no facts upon which it may be founded. . . .

* * * * * *

But in *Tucker v. Alexander* the right of the Government to insist upon compliance with the statutory requirement was

---

**22.** The text of this provision is identical to the 1970 version of the official code applicable to the 1971 and 1972 tax years.

emphasized. Only because that right was recognized was it necessary to decide whether it could be waived. The Court held that it could, and that in that case it had been waived by the stipulation of the collector filed in court. Here there was no compliance with the statute nor was there a waiver of its condition, since the Commissioner had no knowledge of the claim and took no action with respect to it.

The necessity for filing a claim such as the statute requires is not dispensed with because the claim may be rejected. It is the rejection which makes the suit necessary.... Even though formal, the condition upon which the consent to suit is given is defined by the words of the statute, and 'they mark the conditions of the claimant's right.' *Rock Island R.R. v. United States*, 254 U.S. 141, 143 [41 S.Ct. 55, 56, 65 L.Ed. 188 (1920) ]. Compliance may be dispensed with by waiver, as an administrative act, *Tucker v. Alexander, supra;* but it is not within the judicial province to read out of the statute the requirement of its words. *Rand v. United States*, 249 U.S. 503, 510 [39 S.Ct. 359, 361, 63 L.Ed. 731 (1919) ].

*United States v. Felt & Tarrant Mfg. Co.*, 283 U.S. 269, 272–73, 51 S.Ct. 376, 377–78, 75 L.Ed. 1025 (1931); *see also Arch Eng'g Co. v. United States*, 783 F.2d 190 (Fed.Cir. 1986). More recently, citing to 26 U.S.C. § 7422(a), the United States Claims Court has held: "The filing of a claim for a refund with the Internal Revenue Service is a jurisdictional requirement for suit in federal court." *Buttke v. United States*, 13 Cl.Ct. 191, 192 (1987).

### Burden of Proof

In a tax refund case, there is a strong presumption of the correctness of the findings of the Commissioner of Internal Revenue. The taxpayer has the burden of rebutting that presumption and of establishing entitlement to a specific amount of a deduction claimed. *United States v. Janis*, 428 U.S. 433, 440–41, 96 S.Ct. 3021, 3025–26, 49 L.Ed.2d 1046 (1976); *Helvering v. Taylor*, 293 U.S. 507, 514, 55 S.Ct. 287, 290, 79 L.Ed. 623 (1935); *Welch v. Helver-*

*ing,* 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933); *Danville Plywood Corp. v. United States*, 899 F.2d 3, 7–8 (Fed.Cir. 1990); *L.W. Hardy Co. v. United States*, 1 Cl.Ct. 465, 470 (1982); *Young & Rubicam, Inc. v. United States*, 187 Ct.Cl. 635, 654–55, 410 F.2d 1233, 1244–45 (1969). In order to overcome this presumption, the taxpayer has the burden of presenting "substantial evidence as to the wrongfulness of the Commissioner's determination." *KFOX, Inc. v. United States*, 206 Ct.Cl. 143, 151–52, 510 F.2d 1365, 1369 (1975) (citing *Comm'r v. Riss*, 374 F.2d 161 (8th Cir. 1967)); *Helvering v. Taylor*, 293 U.S. at 515, 55 S.Ct. at 290–291. The burden imposed on a plaintiff is both the burden of going forward and the burden of persuasion. A plaintiff first must come forward with enough evidence to support a finding contrary to the Commissioner's determination. *Danville Plywood Corp.*, 899 F.2d at 7–8; *Transamerica Corp. v. United States*, 902 F.2d 1540, 1543 (Fed.Cir.1990). To this end, in *Helvering v. Taylor*, the United States Supreme Court stated:

Unquestionably the burden of proof is on the taxpayer to show that the commissioner's determination is invalid. *Lucas v. Structural Steel Co.*, 281 U.S. 264, 271 [50 S.Ct. 263, 266, 74 L.Ed. 848 (1930) ]. *Wickwire v. Reinecke*, 275 U.S. 101, 105 [48 S.Ct. 43, 44, 72 L.Ed. 184 (1927) ]; *Welch v. Helvering*, 290 U.S. 111, 115 [54 S.Ct. 8, 9, 78 L.Ed. 212 (1933) ]. Frequently, if not quite generally, evidence adequate to overthrow the commissioner's finding is also sufficient to show the correct amount, if any, that is due. *See, e.g., Darcy v. Commissioner*, 66 F.(2d) 581, 585 [ (2nd Cir.1933) ].

293 U.S. at 515, 55 S.Ct. at 291. Even after satisfying the burden of going forward, however, a plaintiff must still carry the ultimate burden of proof. *Helvering v. Taylor*, 293 U.S. at 515, 55 S.Ct. at 290–291; *Danville Plywood Corp.*, 899 F.2d at 7–8; *Transamerica Corp. v. United States*, 902 F.2d at 1543.

*Deductions for Business Related and Itemized Personal Expenses*

As a general proposition, the Supreme Court has held that:

The propriety of a deduction does not turn upon general equitable considerations, such as a demonstration of effective economic and practical equivalence. Rather, it 'depends upon legislative grace; and only as there is clear provision therefor can any particular deduction be allowed.' *New Colonial Ice Co. v. Helvering,* 292 U.S. 435, 440 [54 S.Ct. 788, 790, 78 L.Ed. 1348] (1934); *Deputy v. Du Pont,* 308 U.S. 488, 493 [60 S.Ct. 363, 366, 84 L.Ed. 416] (1940). This Court has observed repeatedly that, while a taxpayer is free to organize his affairs as he chooses, nevertheless, once having done so, he must accept the tax consequences of his choice, whether contemplated or not, *Higgins v. Smith,* 308 U.S. 473, 477 [60 S.Ct. 355, 357, 84 L.Ed. 406] (1940); *Old Mission Portland Cement Co. v. Helvering,* 293 U.S. 289, 293 [55 S.Ct. 158, 160, 79 L.Ed. 367] (1934); *Gregory v. Helvering,* 293 U.S. 465, 469 [55 S.Ct. 266, 267, 79 L.Ed. 596] (1935), and may not enjoy the benefit of some other route he might have chosen to follow but did not.

*Commissioner v. Nat. Alfalfa Dehydrating & Milling Co.,* 417 U.S. 134, 148–49, 94 S.Ct. 2129, 2137, 40 L.Ed.2d 717 (1974).

Plaintiffs have claimed certain deductions which they characterize as business related expenses pursuant to 26 U.S.C. § 162 (1964). I.R.C. section 162 states:

(a) In general

There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

(1) a reasonable allowance for salaries or other compensation for personal services actually rendered;

(2) traveling expenses (including amounts expended for meals and lodg-

ing other than amounts which are lavish or extravagant under the circumstances) *while away from home* in the pursuit of a trade or business; and

(3) rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity.

26 U.S.C. § 162(a) (1964) (emphasis added).[23]

■ I.R.C. section 162(a) allows deductions for ordinary and necessary expenses paid or incurred during the taxable year, which pertain to the carrying on of a trade or business. *Indopco, Inc. v. Commissioner,* —— U.S. ——, ——, 112 S.Ct. 1039, 1042, 117 L.Ed.2d 226 (1992). In order for plaintiffs to meet their burden of proof under section 162(a), they must prove that the deduction claimed as a business expense: (1) was paid or incurred during the taxable year; (2) was for carrying on their trade or business; (3) was an expense; (4) was a necessary expense; and (5) was an ordinary expense. *Commissioner v. Lincoln Savs. & Loan Ass'n,* 403 U.S. 345, 352, 91 S.Ct. 1893, 1898, 29 L.Ed.2d 519 (1971); *Welch v. Helvering,* 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212 (1933); *Danville Plywood Corp. v. United States,* 899 F.2d 3, 6 (Fed.Cir.1990).[24] In other words, to prove that a claimed deduction is proper, plaintiffs must prove the amount, time, place and business purpose of each individual expense item in accordance with 26 U.S.C. § 274 (1964) and Treas.Regs. § 1.162–17(d)(2) and § 1.274–5(b)(1).

The applicable Code section prescribes the following:

§ 274. **Disallowance of certain entertainment, etc., expenses.**

(a) **Entertainment, amusement, or recreation.**

---

**23.** The text of this provision is identical to the 1970 version of the official code applicable to the 1971 and 1972 tax years.

**24.** In the instant case, the plaintiffs have failed to demonstrate that the deductions which they

have claimed were paid or incurred during the taxable years at issue. Therefore, the court does not even reach the questions of whether the deductions claimed qualify as ordinary and necessary trade or business expenses.

**(1) In general.**

No deduction otherwise allowable under this chapter shall be allowed for any item—

**(A) Activity.**

With respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, unless the taxpayer establishes that the item was directly related to, or, in the case of an item directly preceding or following a substantial and bona fide business discussion (including business meetings at a convention or otherwise), that such item was associated with, the active conduct of the taxpayer's trade or business, or

**(B) Facility.**

With respect to a facility used in connection with an activity referred to in subparagraph (A), unless the taxpayer establishes that the facility was used primarily for the furtherance of the taxpayer's trade or business and that the item was directly related to the active conduct of such trade or business,

and such deduction shall in no event exceed the portion of such item directly related to, or, in the case of an item directly related to, or, in the case of an item described in subparagraph (A) directly preceding or following a substantial and bona fide business discussion (including business meetings at a convention or otherwise), the portion of such item associated with the active conduct of the taxpayer's trade or business.

**(2) Special rules.**

For purposes of applying paragraph (1)—

(A) Dues or fees to any social, athletic, or sporting club or organization shall be treated as items with respect to facilities.

(B) An activity described in section 212 shall be treated as a trade or business.

**(b) Gifts.**

 \* \* \* \* \* \*

**(c) Certain foreign travel.**

 \* \* \* \* \* \*

**(d) Substantiation required.**

No deduction shall be allowed—

(1) under section 162 or 212 for any traveling expense (including meals and lodging while away from home),

(2) for any item with respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, or with respect to a facility used in connection with such an activity, or

(3) for any expense for gifts,

unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, or use of the facility, or the date and description of the gift, (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, using the facility, or receiving the gift. The Secretary or his delegate may by regulations provide that some or all of the requirements of the preceding sentence shall not apply in the case of an expense which does not exceed an amount prescribed pursuant to such regulations.

**(e) Specific exceptions to application of subsection (a). Subsection (a) shall not apply to—**

**(1) Business meals.**

Expenses for food and beverages furnished to any individual under circumstances which (taking into account the surroundings in which furnished, the taxpayer's trade, business, or income-producing activity and the relationship to such trade, business, or activity of the persons to whom the food and beverages are furnished) are of a type generally considered to be conducive to a business discussion.

**(2) Food and beverages for employees.**

Expenses for food and beverages (and facilities used in connection therewith) furnished on the business premises of the taxpayer primarily for his employees.

**(3) Expenses treated as compensation.**

Expenses for goods, services and facilities, to the extent that the expenses are treated by the taxpayer, with respect to the recipient of the entertainment, amusement, or recreation, as compensation to an employee on the taxpayer's return of tax under this chapter and as wages to such employee for purposes of chapter 24 (relating to withholding of income tax at source on wages).

**(4) Reimburses expenses.**

Expenses paid or incurred by the taxpayer, in connection with the performance by him of services for another person (whether or not such other person is his employer), under a reimbursement or other expense allowance arrangement with such other person, but this paragraph shall apply—

(A) where the services are performed for an employer, only if the employer has not treated such expenses in the manner provided in paragraph (3), or

(B) where the services are performed for a person other than an employer, only if the taxpayer accounts to the extent provided by subsection (d) to such person.

**(5) Recreational, etc. expenses for employees.**

Expenses for recreational, social, or similar activities (including facilities therefor) primarily for the benefit of employees (other than employees who are officers, shareholders or other owners, or highly compensated employees). For purposes of this paragraph, an individual owning less than a 10–percent interest in the taxpayer's trade or business shall not be considered a shareholder or other owner, and for such purposes an individual shall be treated as owning any interest owned by a member of his family (within the meaning of section 267(c)(4)).

\* \* \* \* \* \*

26 U.S.C. § 274 (1964).[25]

Treasury Regulation § 1.162–17 sets forth the recordkeeping requirements for proving that expenses are ordinary and necessary business expenses. The regulation states:

The Code contemplates that taxpayers keep such records as will be sufficient to enable the Commissioner to correctly determine income tax liability. *Accordingly, it is to the advantage of taxpayers who may be called upon to substantiate expense account information to maintain as adequate and detailed records of travel, transportation, entertainment, and similar business expenses as practical since the burden of proof is upon the taxpayer to show that such expenses were not only paid or incurred but also that they constitute ordinary and necessary business expenses.* One method for substantiating expenses incurred by an employee in connection with his employment is through the preparation of a daily diary or record of expenditures, maintained in sufficient detail to enable him to readily identify the amount and nature of any expenditure, and the preservation of supporting documents, especially in connection with large or exceptional expenditures. Nevertheless, it is recognized that by reason of the nature of certain expenses or the circumstances under which they are incurred, it is often difficult for an employee to maintain detailed records or to preserve supporting documents for all his expenses. *Detailed records of small expenditures incurred in travelling or for transportation, as for example, tips, will not be required.*

Treas.Reg. § 1.162–17(d)(2) (1968) (emphasis added).[26]

Furthermore, Treasury Regulation § 1.274–5 sets forth the substantiation requirements necessary to obtain a deduction for travel and entertainment expenses. 26 C.F.R. § 1.274–5. It requires that plaintiffs substantiate the amount, time, place

---

**25.** The text of this provision is identical to the 1970 version of the official code applicable to the 1971 and 1972 tax years.

**26.** The text of the 1968 version is identical to the versions of the C.F.R. applicable to the 1971 and 1972 tax years.

and business purpose of each expenditure. Treasury Regulation § 1.274–5 states, in pertinent part:

> (b) *Elements of an expenditure*—(1) *In general.* Section 274(d) and this section contemplate that no deduction shall be allowed for any expenditure for travel, entertainment, or a gift unless the taxpayer substantiates the following elements for each such expenditure:
>
> (i) Amount;
>
> (ii) Time and place of travel or entertainment (or use of a facility with respect to entertainment), or date and description of a gift;
>
> (iii) Business purpose; and
>
> (iv) Business relationship to the taxpayer of each person entertained, using an entertainment facility or receiving a gift.

Treas.Reg. § 1.274–5(b)(1) (1968).[27]

As late as the November 13, 1991 status conference (just prior to the commencement of the Group I trials on December 2, 1991), counsel for the plaintiff, Charles Abrahams, once again, was advised of the need for the plaintiffs to offer substantiation for the deductions claimed, or to provide a legally recognized basis for plaintiffs' failure to substantiate the deductions claimed. The following colloquy occurred:

> THE COURT: I have heard this a lot of times. Let us talk about what we are doing here. We are talking about a trial. At trial, you have a burden of proof, Mr. Abrahams. And in order to carry that burden of proof, you are going to have to document your deductions.
>
> MR. ABRAHAMS: Your Honor, I have also indicated before that there are exceptions. And that is why I have the list of witnesses. And I do not know how many of them are able to come because of the expense. But you can corroborate the deductions without substantiation.
>
> THE COURT: Well, all I am telling you—

> MR. ABRAHAMS: And there are a lot of deductions that you do not need substantiation.
>
> THE COURT: All right. All I am telling you is that you need to do two things. One is substantiate deductions. And if you cannot substantiate them or do not feel that you need to, either one, then make sure that you have good legal precedent and statutory authority and regulatory authority for why you do not need to, and we will talk about it. The burden of proof remains yours, and you need to carry it, or need to prove why it is carried with whatever you do.
>
> I am not going to tell you how to conduct your case. That is up to you. You are the attorney of record for the Plaintiffs. I am just telling you that I do not want to go and waste my time and hear a lot of general testimony without any specific documentation, and without specific legal reasons why I do not need it. I am just telling you, be sure that you are prepared to carry your burden of proof in one way or the other. How you do it is your choice.

■ Defendant argues that plaintiffs have failed to set forth sufficient information to prove the amount, time, place and business purpose of each expense for which plaintiffs have claimed a deduction for business related expenses under I.R.C. § 162. In its post-trial memorandum, the defendant properly contends that the vague and unspecific testimony of the plaintiffs about categories of expenses does not meet the requirements of the applicable regulations and does not provide the information which this Court must have in order to make an expenditure-by-expenditure determination of the deductibility of each of the expense items claimed. *Dowell v. United States,* 522 F.2d 708, 714 (5th Cir.1975), *cert. denied,* 426 U.S. 920, 96 S.Ct. 2626, 49 L.Ed.2d 374 (1976); *Stemkowski v. Commissioner,* 690 F.2d 40, 47–48 (2d Cir.1982) (a hockey player tax case brought in the United States Tax Court); *Hanna v. Commissioner,* 763 F.2d 171,

---

**27.** The text of the 1968 provision is identical to the versions of the C.F.R. applicable to the 1971 and 1972 tax years.

172–73 (4th Cir.1985) (a hockey player tax case brought in the United States Tax Court); *Danville Plywood Corp. v. United States,* 16 Cl.Ct. 584, 595–97 (1989), *aff'd,* 899 F.2d 3 (Fed.Cir.1990). Indeed, if such item-by-item substantiation is lacking, the deduction must be disallowed in its entirety. *Dowell v. United States,* 522 F.2d at 714.[28]

Turning now to the evidence which the plaintiffs offered at trial, the court notes that it was extremely limited and unpersuasive. As discussed more fully below, Frederick Speck was the only witness to appear at trial. Linda L. Speck, although a party plaintiff, did not attend, and did not testify. Mr. Speck provided only general testimony concerning the expenses for which deductions were claimed. Moreover, it was apparent, based on the court's opportunity to observe Mr. Speck while he testified, that plaintiff did not have clear, independent recollections of the expenditures claimed in 1968, in 1971 or in 1972. When he could remember, the extent of his recollection generally included categories of expenses, rather than individual expenses. Mostly, plaintiff Frederick Speck consulted the trial exhibits to refresh his recollection prior to offering testimony. Plaintiffs consistently failed to provide documentation to substantiate their claims for deductions and the minimal evidence offered at trial did little to support their position. Also, strangely enough, some of the evidence which was submitted by plaintiffs even controverted their claims. The court has been baffled as to why plaintiffs and their counsel, knowing how little substantiation they could provide, insisted on taking up the time of all those present, including themselves, at the trial proceedings.

Despite the numerous deductions claimed for 1968, 1971 and 1972 by plaintiffs on their tax returns and/or on the Form 843 claims, and then reasserted in the petition filed in this court, only six (6) joint exhibits and five (5) plaintiffs' exhibits were introduced during the entire *Speck* trial.[29]

The following exhibits were introduced into and became part of the record:

| Exhibit No. | Joint Exhibits |
| --- | --- |
| 1 | Plaintiff's petition in the above-captioned suit with attachments. |
| 2 | Form 1040NR (U.S. Nonresident Alien Income Tax Return) for the 1968 tax year. |
| 3 | Form 1040NR (U.S. Nonresident Alien Income Tax |

**28.** The *Dowell* case is analogous to the one at bar. Both the district court in *Dowell,* and this court, have been flooded with paper by the plaintiffs, much of it irrelevant to the specific matters before the court. This court wishes to avoid the mistake made by the trial court in *Dowell,* which prompted the Fifth Circuit Court of Appeals to write:

It is apparent that the District Court was snowed under by the volume of paper in evidence and chose not to wade through it to make an expenditure-by-expenditure determination, instead making a general determination that the deductions were substantiated.

Yet, this is just what § 274(d) requires the District Court to do. A less stringent examination would echo the approach under the former *Cohan* rule and clearly defeat the purpose of § 274(d).
*Dowell v. United States,* 522 F.2d at 714.

**29.** On November 8, 1991, plaintiffs' counsel finally filed a list of twenty-six (26) exhibits to be used at trial. On December 2, 1991, the first day of the Group I trials, plaintiffs' counsel, Charles L. Abrahams, filed a motion for leave to file plaintiffs' amended exhibit list which proposed inclusion of three additional exhibits.

| Exhibit No. | Joint Exhibits |
|---|---|
| | Return) for the 1971 tax year. |
| 4 | Form 1040 (U.S. Individual Income Tax Return) for the 1972 tax year. |
| 5 | Form 843 (Claim for Refund) for the 1968 tax year. |
| 6 | Form 843 (Claim for Refund) for the 1972 tax year. |

| Exhibit No. | Plaintiffs' Exhibits |
|---|---|
| 1002 | Answer to Interrogatories |
| 1003 | Plaintiff's Response |
| 1029 A–M | Signed Fact Contract [30] |
| 1029 N–CC | Signed Fact Contract [31] |
| 1030 | Hockey Register, dated 1973–1974 |

Curiously, the tax returns and Form 843 claims for refund were the principal documents upon which plaintiffs relied to support most of their claims before this court. In this respect, plaintiffs employed a novel approach in seeking to persuade this court that the deductions claimed were proper. Rather than substantiating a claim for deduction with independent "adequate and detailed records" as required by Treas. Reg. § 1.162–17, or providing reliable secondary or collateral sources of evidence as mandated by Treas.Regs. § 1.274–5(c)(3) and § 1.162–17(d)(3), plaintiffs attempted to bootstrap their claim with testimony relying on the very documents (the tax returns and Form 843 claims for refund), the correctness of which are at issue in the instant case. Defendant notes that the answers to interrogatories, entered into evidence as one of plaintiffs' exhibits during the trial, merely repeat figures set forth in plaintiffs' claims for refund and tax returns. The Federal Rules of Civil Procedure Rule 33(b) provide that the answers to interrogatories may be used at trial to the extent provided in the Rules of Evidence (Fed. R.Civ.Pro. 33(b)). The interrogatories, included by plaintiffs in the evidence submitted for trial, which might have been useful to impeach a witnesses' testimony, however-er, should not be used by plaintiffs in place of live testimony or documentary evidence.

This court not only finds the methods employed by plaintiffs and their counsel unpersuasive, but notes that in light of the clear substantiation requirements set forth in the applicable Treasury Regulations, as well as the applicable legal precedent, plaintiffs' approach may easily be characterized as a waste of the court's time, an issue which will be more fully addressed in this court's subsequently to be issued order on Rule 11 sanctions requested by defendant in the instant case, and in the other Group I cases. Nonetheless, in order to fully dispose of the above-captioned case, in a manner as fair to the plaintiffs as possible, despite the failure at trial to substantiate even a single one of the business deductions claimed, the court addresses each claim individually.

### 1 Tax Preparation

Plaintiff Frederick Speck, in his individually filed 1968 Form 843 claim, requests a deduction of $45.00, the amount allegedly paid for tax preparation in 1968, asserting that such expenses were deductible business expenses. This claimed de-

---

**30.** The court reporter listed these as "Signed Fact Contract." These same two exhibits also contain correspondence on the player contract and the player contract documents for the years 1968, 1971 and 1972.

**31.** See footnote 30, immediately above.

duction was not included on plaintiffs' jointly filed 1040NR tax return for the 1968 tax year. Plaintiff Frederick Speck presented no testimony at trial and offered no records to support this claim. Plaintiffs' claim arising from deduction of tax preparation expenses in 1968 is, therefore, denied. .

▆ Plaintiff Frederick Speck claims, by attachment to his 1040NR tax form, filed for the year 1971, a deduction in the amount of $45.00 for tax preparation. From the records before the court, it appears that this deduction was not the subject of a Form 843 claim.[32] At the trial, plaintiff Speck stated, however, that he did not know how much he had spent for tax return preparation. Only after referring to his 1040NR tax return, and the attachments thereto, included in the joint exhibits, did Mr. Speck testify: "[i]t says $45, on my form." Based on the court's observation of this witness at trial, it is clear that plaintiff Frederick Speck had no independent recollection of how much he had paid for tax preparation services for the 1971 tax year. Furthermore, plaintiffs were unable to produce any document to substantiate this claim. The claim is, therefore, denied.

Plaintiffs, likewise, claim a deduction in the amount of $135.00 on their jointly filed 1040 tax form for tax preparation for the 1972 tax year. From the records before the court, it appears that this deduction also was not the subject of a Form 843 claim.[33] Moreover, as discussed below in the item denominated Negotiation Fee (Tax Planning and Business Advice), there appears to be a second claim included in that category for an additional $150.00 for the same services. Plaintiffs presented no testimony or records to support the $135.00

claim. Plaintiffs' claim arising from deduction of tax preparation expenses for the 1972 tax year is, therefore, denied.

### 2 Hockey Association Dues

▆ Plaintiff Frederick E. Speck claims a deduction for amounts allegedly paid for professional dues in 1968 on his individually filed Form 843. Plaintiff's Form 843 claim reflects a business deduction of $125.00 for professional dues. Plaintiff Frederick Speck in his testimony at trial indicated that depending on what league you were in, it would vary, and stated that: "In 1968, I would guess, Central Hockey League, had maybe $125, or $175." However, plaintiffs were unable to provide any documents to substantiate this deduction. This claim is, therefore, denied.

With respect to 1971, plaintiff Frederick Speck, filing individually, claims, by attachment to his 1040NR tax form, a deduction in the amount of $175.00 for Hockey Association Dues. From the record before the court, it appears that this deduction also was not the subject of a Form 843 claim. On this item, plaintiff likewise testified "again, I'm guessing. But, it would have been, in the neighborhood of $125 to $175. There were adjustments to that. But, I don't know during what years." Plaintiff, however, has been unable to produce any document to substantiate this claim. This claim is, therefore, denied.

### 3 State Disability Insurance

▆ Plaintiffs, by attachment to their joint 1040NR return for the 1968 tax year, claim $74.00 in state disability insurance

---

**32.** The relevant Form 843 claim filed for the 1971 tax year on behalf of plaintiff Frederick Speck, alone, but signed by plaintiff's counsel, Charles Abrahams, stated that taxpayer erroneously filed a Form 1040 instead of a Form 1040NR and dealt primarily with the income allocation issue as a basis for a claimed refund allegedly due to him. The Form 843 also stated that "[t]axpayer" had "[a]lready received credit on tax return for Itemized Deductions $1,834 [and] Employee Business Expenses $735," for a total of $2,569. Curiously, and without apparent justification, on his Form 843 claim, plaintiff Frederick Speck also includes a list of "Total deductions and exclusions in addition to the

original tax return," which once again lists $2,569 as due, the same figure he had listed on the previous page as part of an entry "Already received credit on tax return for" on the return.

**33.** The relevant Form 843 claim filed for the 1972 tax year was filed jointly by plaintiffs Linda and Frederick Speck. It dealt with only two claimed deductions, allegedly not reflected on plaintiffs' original joint tax returns:

1. Unreimbursed away from home expenses for 120 days and nights at team city = $3,360.
2. Miscellaneous Deductions not taken on original Tax Return = $301.

premiums as business deductions connected with their United States income. On cross-examination, the plaintiff, Frederick E. Speck, was asked: "Q. You have an item there for 'State Disability Insurance' Do you know which states, you paid the disability insurance, to? A. No, sir." Plaintiff also failed to provide any documents substantiating such payments. This claim is, therefore, denied.

With respect to 1971, plaintiff, Frederick E. Speck, claims, by attachment to his 1040NR tax form, filed individually, a deduction in the amount of $74.00 for state disability insurance. From the record before the court, however, it appears that this deduction was not the subject of a Form 843 claim. Plaintiff presented no testimony or records to substantiate this claim. He did, however, testify that although he was in more than one state in 1971, he did not know to which state he paid disability insurance. This claim is, therefore, denied.

In their post-trial brief, plaintiffs assert that they are entitled to an $80.00 state disability deduction for the 1972 tax year.[34] Plaintiffs, however, failed to include this deduction in their jointly filed 1972 tax return and apparently did not include this deduction in a Form 843 claim for that year. Furthermore, plaintiff Frederick Speck did not testify regarding state disability or provide any records on this issue for the year 1972. To the extent such a claim was ever properly asserted, it was also not documented, and is rejected.

### 4 Trade Publications

█ In the Form 843, individually filed for the 1968 tax year, Frederick Speck claims a business deduction of $60.00, the amount allegedly paid for trade publications in 1968. In support of this claim, plaintiff Frederick Speck testified at trial that he subscribed to trade publications at a cost of "in the neighborhood of $70 to $80." Plaintiffs, however, submitted no substantiating documentary evidence to bolster Frederick Speck's imprecise recollection. This claim is, therefore, denied.

With respect to 1971, plaintiff Frederick E. Speck claims by attachment to his individually filed 1040NR tax form, a deduction in the amount of $72.00 for trade journals. From the record before the court, it appears that this deduction was not the subject of a Form 843 claim. In support of this claim for deduction, plaintiff testified that "[i]t probably would have been the same, as in other years. Seventy to $80, barring inflation on the documents." But, plaintiffs were unable to submit any documents to substantiate this claim. This claim is, therefore, denied.

Plaintiffs also assert a claim based upon a deduction of $75.00 for trade journals by attachment to their 1972 joint tax return. From the record before the court, it appears that this deduction was not the subject of a Form 843 claim. Plaintiffs, however, failed to present any testimony or records to substantiate this claim. This claim is, therefore, denied.

### 5 Use of Home Telephone/Television

█ Plaintiffs ⁻claim a deduction for amounts allegedly paid for home telephone and television, asserting that such expenses were deductible business expenses for the year 1968. The Form 843 claim filed by plaintiff Frederick Speck alleges that in 1968 he paid $73.00 for television and telephone service. Although plaintiff Frederick E. Speck testified to having had telephone service in 1968 at an estimated cost of $100.00 to $125.00 per month, he was unable to substantiate those expenses by submission of any documentary evidence. Moreover, plaintiff's testimony in support of these expenses not only was vague, bringing into doubt the accuracy of his recollection, but he stated that under twenty-five percent of the actual monthly cost of the phone bill was used for business. Plaintiff's testimony as to television expenses was equally unconvincing, as he was unable to remember whether he had rented or bought a television. Moreover, he estimated that the television was used for hockey related subjects only about

---

**34.** In the 1972 return, the only item for $80.00 which appears in Schedules A and B, item 16, is denominated "Other," and included under the heading "TAXES."

twenty percent of the time, to watch hockey games on television in order to see the style of play of different teams. However, plaintiffs have made no attempt to allocate these deductions to business and non-business use with any precision, and instead have improperly claimed a business deduction for the entire amount. This claim is, therefore, denied.

■ With respect to 1971, plaintiff Frederick E. Speck claims, by attachment to his individually filed 1040NR tax form, a deduction in the amount of $82.00 for home telephone and television. From the record before the court, however, it appears that this deduction was not the subject of a Form 843 claim. At one point during his testimony, plaintiff testified that usage, including the alleged twenty percent of the television use for business related purposes, would have been similar to that in 1968. Later in his testimony, however, while looking at the copy of his 1971 tax form he offered, "[i]f I'm not mistaken, I think that the TV was based on $4 a month.... The rest would have been for phone." He also stated that the total for TV would have been $24.00. Plaintiff, however, was unable to produce any documents to substantiate this claim to a deduction. This claim is, therefore, denied.

■ Plaintiffs further claim, by attachment to their 1040 form filed for the year 1972, a deduction in the amount of $95.00 for "TV & Home Telephone for Business." From the record before the court, it appears that this deduction was not addressed in a Form 843 claim. At trial, plaintiff Frederick E. Speck again testified that only twenty percent of the television and twenty-five percent of the telephone use was business related, although he believed that in 1972 he had bought a TV and that "... TV, probably would have been in the $24 to $30 area." However, plaintiffs were unable to produce any telephone bills or other records to substantiate this claim and did not attempt to allocate precisely between business and non-business use. Plaintiff's claim for deduction of television and home telephone service expenses is, therefore, denied.

## 6 Promotional Expenses

■ Plaintiffs claim a deduction on their 1968 1040NR tax return filed jointly in the amount of $50.00 for "publicity photos." On the Form 843 claim for 1968, plaintiff Frederick Speck, filing alone, stated that he had already received a $50 credit for an item categorized as "promotional expenses." At trial, however, plaintiff Frederick E. Speck testified to having spent "$75 to $100" for photos for fans in 1968. Regardless of the inconsistencies, and assuming the photos are the promotional expenses at issue, plaintiff did not produce any records to substantiate this promotional expense claim. Plaintiff's claim is, therefore, denied.

Plaintiff Frederick E. Speck claims a deduction on his 1971 individually filed 1040NR tax form in the amount of $265.00 for "Promotional Expenses, Photographs, Etc." From the record before the court, it appears that this deduction was not the subject of a Form 843 claim. In support of this claim, however, plaintiff initially testified by guessing that it "should have been in the neighborhood of $200. Somewhere in that area." Subsequently he revised this estimate to "in the neighborhood, of $100 to $200," and further described the expenditure of the funds for "photos, stamps, miscellaneous things, relating to that type of a public relation promotion that we would run." Plaintiff failed to produce any documents substantiating his vague testimony. This claim is, therefore, denied.

In their jointly filed 1972 tax return, plaintiffs assert $76.00 in promotional expenses as business deductions. No specific deduction in this amount appears on the joint Form 843 claim. Plaintiffs also failed to produce documents or testimony to substantiate this claim. The claim is, therefore, denied.

## 7 Conditioning Related Expenses

■ Plaintiff Frederick E. Speck, in his individually filed Form 843 for the 1968 tax year, claims a deduction of $110.00 for amounts allegedly paid as expenses for

conditioning activities. Plaintiff states that he had incurred expenses for the purchase of running shoes, sweat suits, golf balls, and other equipment. Plaintiff Frederick E. Speck testified: "I played golf. I played a little tennis. I did some jogging. Just general exercise. Summer exercises for the hockey players." Plaintiff guessed as to the expenses incurred, that "the whole package, might have been, $300." Plaintiff, however, has failed to provide any documents to substantiate this claim or to differentiate between business and personal recreational expenses. Plaintiffs' claim arising from conditioning related expenses is, therefore, denied.[35]

## 8 Sales Tax

■ In 1968, plaintiffs claim the amount of $46.00 in Texas sales tax as a business deduction on their jointly filed 1040NR. In the Form 843 claim for 1968, filed by plaintiff Frederick Speck alone, however, plaintiff concedes that a $46.00 credit already was received for sales tax. Therefore, plaintiffs' claim for sales tax expenses for the year 1968 is not properly before the court and is, hereby, dismissed.[36]

■ In 1971, plaintiff claims the amount of $361.00 in sales tax as a business deduction on the 1040NR tax return filed by plaintiff Frederick E. Speck alone. From the record before the court, it appears that this deduction was not the subject of a Form 843 claim filed with the I.R.S. for this tax year. Because plaintiff

failed to address this issue in his testimony at trial or produce any documentary evidence in support thereof, this claim is denied.

On their 1972 joint tax return, plaintiffs claim deductions for various taxes. In the post-trial brief, plaintiffs' counsel included a deduction in the amount of $269.00 in sales tax as a business deduction.[37] This deduction was not included in plaintiffs' joint Form 843 claim filed with the I.R.S. for this tax year. Furthermore, plaintiff offered no testimony at trial and produced no documentary evidence to support the claim. Thus, this claim is denied.

## 9 Interest

■ Plaintiffs claim as a deduction the amount of $453.00 in interest on a home in Burlington, Ontario, Canada, (plaintiff Frederick Speck testified that he did not own a home in the United States) as a deduction in their 1972 jointly filed 1040 tax return. This deduction was not the subject of a Form 843 claim filed with the I.R.S. Furthermore, plaintiff has not produced documents to support the claim. Also, as discussed more fully below, because plaintiffs are non-resident aliens, a claim for an interest deduction for the Burlington, Ontario property in Canada, which is not an expense resulting from the conduct of a United States trade or business and is not proper pursuant to 26 U.S.C. § 873(a) (1970). This claim is, therefore, denied.

---

**35.** Strangely enough, although plaintiffs claimed generic conditioning expenses for the 1968 tax year, for the 1971 and 1972 tax years, plaintiffs on the chart submitted by plaintiffs' counsel in his post-trial brief, see pages 15–16, *supra*, itemized most of the conditioning expense claims in categories such as trainer fees, golf shoes, golf balls, green fees, sweatsuit, swim suit, running shoes, tennis balls, tennis shoes, handballs, bowling, therapeutic treatment, health club membership, golf clubs, and tennis racquets. Yet, at trial plaintiff Frederick Speck testified that he would have spent "between $600 and $700" on "all conditioning activities in 1971."

**36.** Although axiomatic that plaintiffs should not be allowed to receive credit twice for the same

deduction, plaintiffs' attorney, Charles Abrahams, seems to be either unaware of the prohibition on double recovery or is unaware that his clients have been credited for this deduction by the government due to his obviously inadequate recordkeeping and inability to locate files, difficulties he demonstrated throughout the proceedings. In fact, at a number of court appearances, plaintiffs' counsel, Charles Abrahams, himself admitted that he was having great difficulty retrieving material from his files.

**37.** The only way to achieve the $269.00 figure is to add $190.00 claimed for general sales taxes and an unspecified $79.00 "Taxes" deduction marked "Other." However, there is an additional "Taxes" deduction included on the 1972 tax return for $80.00, also for unspecified taxes.

### 10 Medical Expenses

■ Plaintiffs claim the amount of $150.00 in medical expenses as a deduction on their 1972 Form 1040 jointly filed tax return. This deduction was not the subject of a Form 843 claim. Plaintiff has not addressed this deduction by way of testimony offered at trial or documents produced. This claim is, therefore, denied.

### 11 Trainer Fees

■ Plaintiff, Frederick E. Speck, claimed by attachment to his individually filed 1971 1040NR tax return, a deduction in the amount of $50.00 for trainer fees. This deduction was not the subject of a Form 843 claim for the 1971 tax year. Although his recollection was vague, Frederick Speck testified that he thought $50.00 paid to the trainer was standard. However, no records or documents were produced to substantiate the deduction. This claim is, therefore denied.

■ Plaintiffs claim, by attachment to their jointly filed 1972 1040 tax return, a deduction in the amount of $90.00 for trainer fees. This deduction also was not the subject of a Form 843 claim filed with the I.R.S. In support of this deduction, however, plaintiff Frederick E. Speck testified to having paid less: "probably" $50.00 in trainer's fees in Baltimore. Plaintiffs offered no records or other documents to substantiate this deduction. This claim is, therefore, denied.

### 12 Hairstyle Expenses

■ Plaintiffs claim the amount of $24.00 in hairstyle expenses in excess of $2.50 as a deduction on their 1972 joint tax return. This deduction was not the subject of a Form 843 claim filed with the I.R.S. Furthermore, plaintiffs have not addressed this deduction by way of testimony at trial or offered documentary evidence in support. This claim is, therefore, denied.

### 13 Entertainment

■ Plaintiffs claim by attachment to their joint 1040 form filed for the year 1972, a deduction in the aggregate amount of $243.00 for business related entertainment, including entertaining coach, team, mass media and selected fans to promote his image with fans and team. Plaintiffs listed expense items such as liquor, food and board, but did not specify dollar amounts. In support, plaintiff Frederick Speck testified that he "fairly regularly" took people out and discussed hockey. As a "guesstimate", plaintiff suggested that he might have spent $600.00 to $700.00 on such entertainment. Plaintiff gave no explanation for the wide variance from the $243.00 claimed. Furthermore, plaintiff was unable to present receipts or other records to substantiate such expenses. It appears that this deduction was not the subject of a Form 843 claim filed with the I.R.S. This claim is, therefore, denied.

### 14 Golf Shoes

■ Plaintiff Frederick Speck claims the amount of $150.00 for three pairs of golf shoes as a deduction on his individually filed 1971 tax return. This deduction is not included on a Form 843 claim filed with the I.R.S. Although plaintiff Frederick Speck testified to $150.00 in expenses for "golf," he did not specifically testify regarding what part of the $150.00 may have been for shoes. Moreover, no documentary evidence was presented to substantiate this expense. This claim is, therefore, denied.

Plaintiffs claim the amount of $90.00 for golf shoes as a deduction on their 1972 jointly filed tax return. This deduction does not appear on plaintiffs' Form 843 claim filed with the I.R.S. for the 1972 tax year. Furthermore, plaintiffs presented no testimonial or documentary evidence to support such an expense. This claim is, therefore, denied.

### 15 Golf Balls

■ Plaintiff claims the amount of $80.00 for golf balls as a deduction on his individually filed 1040 tax return for the 1971 tax year. This deduction is not included on Frederick Speck's individually filed Form 843 claim for the 1971 tax year. Although Frederick Speck testified to spending $90.00 on golf balls in 1971, he

presented no reason for the difference from the amounts listed on the tax return or any documentary evidence to support the claimed expense. This claim is, therefore, denied.

### 16 Green Fees

■ Plaintiff Frederick Speck claims the amount of $120.00 for green fees as a deduction on his individually filed 1971 tax return. This deduction is not included in Frederick Speck's individually filed Form 843 claim filed with the I.R.S. for the 1971 tax year. Plaintiff testified that "green fees, per round, were probably $8 to $12, in that general area," and stated "I would estimate that to be $150." He failed, however, to testify as to how much actually was spent in total. Moreover, plaintiffs presented no documentary evidence to support such an expense. This claim is, therefore, denied.

### 17 Sweatsuit

■ Plaintiff Frederick Speck claims the amount of $25.00 for a sweatsuit as a deduction on his individually filed 1971 tax return. This deduction does not appear on plaintiff's Form 843 claim filed with the I.R.S. for the 1971 tax year. Moreover, plaintiffs presented no testimonial or documentary evidence to support such an expense. This claim is, therefore, denied.

Plaintiffs claim the amount of $20.00 for a sweatsuit as a deduction on their jointly filed 1972 tax return. This deduction is not included in plaintiffs' Form 843 claim filed with the I.R.S. for the 1972 tax year. Furthermore, plaintiffs presented no testimonial or documentary evidence to support such an expense. This claim is, therefore, denied.

### 18 Swimsuit

Plaintiff, Frederick Speck, claims the amount of $5.00 for a swimsuit as a deduction on his individually filed 1971 tax return. This deduction is not included on plaintiff's Form 843 claim filed with the I.R.S. for the 1971 tax year. Furthermore, plaintiffs presented no testimonial or docu-

mentary evidence to support such an expense. This claim is, therefore, denied.

Plaintiffs claim the amount of $10.00 for a swimsuit as a deduction on their 1972 jointly filed tax return. This deduction does not appear on plaintiffs' jointly filed Form 843 claim filed with the I.R.S. for the 1972 tax year. Furthermore, plaintiffs presented no testimonial or documentary evidence to support such an expense. This claim is, therefore, denied.

### 19 Running Shoes

Plaintiff, Frederick Speck, claimed the amount of $9.00 for running shoes as a deduction on his individually filed 1971 tax return. This deduction is not on Frederick Speck's individually filed Form 843 claim filed with the I.R.S. for the 1971 tax year. Furthermore, plaintiffs presented no testimonial or documentary evidence to support such an expense. This claim is, therefore, denied.

### 20 Tennis Balls

Plaintiff Frederick Speck claims the amount of $20.00 for tennis balls as a deduction on his individually filed 1971 tax return. This deduction is not included on Frederick Speck's Form 843 claim filed with the I.R.S. for the 1971 tax year. Furthermore, plaintiff presented no testimonial or documentary evidence to support such an expense. This claim is, therefore, denied.

Plaintiffs claim the amount of $16.00 for tennis balls as a deduction on their 1972 joint tax return. This deduction does not appear on plaintiffs' jointly filed Form 843 claim filed with the I.R.S. for the 1972 tax year. Furthermore, plaintiffs presented no testimonial or documentary evidence to support such an expense. This claim is, therefore, denied.

### 21 Tennis Shoes

Plaintiff Frederick Speck claims the amount of $30.00 for tennis shoes as a deduction on his individually filed 1971 tax return. This deduction is not included on Frederick Speck's individually filed Form 843 claim filed with the I.R.S. for the 1971

tax year. Furthermore, at trial, Frederick Speck presented no testimonial or documentary evidence to support such an expense. This claim is, therefore, denied.

Plaintiffs claim the amount of $22.00 for tennis shoes as a deduction on their 1972 joint tax return. This deduction does not appear on plaintiffs' Form 843 claim jointly filed with the I.R.S. for the 1972 tax year. Furthermore, plaintiffs presented no testimonial or documentary evidence to support such an expense. This claim is, therefore, denied.

## 22 Gas Tax

Plaintiffs claim the amount of $30.00 for payment of gas tax as a deduction on their jointly filed 1968 return. This deduction does not appear on plaintiffs' Form 843 claim filed with the I.R.S. for the 1968 year. Furthermore, plaintiffs presented no testimonial or documentary evidence to support such an expense. This claim is, therefore, denied.

Plaintiffs claim the amount of $77.00 for payment of gas tax as a deduction on their 1972 joint return. This deduction is not included on plaintiffs' Form 843 claim filed with the I.R.S. for the 1972 tax year. Furthermore, plaintiff presented no testimonial or documentary evidence to support such an expense. This claim is, therefore, denied.

## 23 Handballs

Plaintiff Frederick Speck claims the amount of $10.00 for handballs as a deduction on his individually filed 1971 tax return. This deduction does not appear on the Form 843 claim filed with the I.R.S. by Frederick Speck alone for the 1971 tax year. Furthermore, plaintiff presented no testimonial or documentary evidence to support such an expense. This claim is, therefore, denied.

## 24 Bowling

Plaintiff claims the amount of $10.00 for bowling as a deduction on his individually filed 1971 tax return. This deduction does

not appear on Frederick Speck's individually filed Form 843 claim for the 1971 tax year. Once again, plaintiff presented no testimonial or documentary evidence to support such an expense. This claim is, therefore, denied.

## 25 Therapeutic Treatment (Massages)

Plaintiff Frederick Speck claims the amount of $50.00 for therapeutic treatment (massage) as a deduction on his individually filed 1971 tax return. This deduction is not included on plaintiff Frederick Speck's individually completed Form 843 claim filed with the I.R.S. for the 1971 tax year. Furthermore, plaintiff presented no testimonial or documentary evidence to support such an expense. This claim is, therefore, denied.

## 26 Health Club Membership

Plaintiff Frederick Speck claims the amount of $225.00 for health club memberships as a deduction on his individually filed 1971 tax return. This deduction does not appear on plaintiff's Form 843 claim filed with the I.R.S. individually for the 1971 tax year. Furthermore, Frederick Speck testified that in 1971 he belonged to several health clubs, and testified that "it would have been, probably, in the neighborhood of $250.00 for membership for the club." He also testified that the health club about which he was testifying was located in Burlington, Canada. Moreover, plaintiffs failed to produce any documentary evidence to support such an expense. This claim is, therefore, denied.

Plaintiffs claim the amount of $150.00 for health club memberships as a deduction on their 1972 joint tax return. This deduction does not appear on plaintiffs' joint Form 843 claim filed with the I.R.S. for the 1972 tax year. Furthermore, plaintiff presented no testimonial or documentary evidence to support such an expense. This claim is, therefore, denied.

## 27 Golf Clubs [38]

Plaintiff Frederick Speck claims the amount of $50.00 for golf clubs as a deduc-

---

38. For the deductions taken on both the tennis racquets and the golf clubs, plaintiffs' deduc-

tion on his individually filed 1971 tax return. This deduction is not included on plaintiff's individually filed Form 843 claim for the 1971 tax year. Furthermore, plaintiff presented no testimonial or documentary evidence to support such an expense. This claim is, therefore, denied.

Plaintiffs claim the amount of $138.00 for golf clubs as a deduction on their joint 1972 tax return. This deduction does not appear on plaintiffs' Form 843 claim filed with the I.R.S. for the 1972 tax year. Furthermore, plaintiffs presented no testimonial or documentary evidence to support such an expense. This claim is, therefore, denied.

### 28 Tennis Racquet [39]

Plaintiff Frederick Speck claims the amount of $8.00 for tennis racquets as a deduction on his individually filed 1971 tax return. This deduction is included on plaintiff's individual Form 843 claim filed with the I.R.S. for the 1971 tax year. Plaintiff, however, presented no testimonial or documentary evidence to support such an expense. This claim is, therefore, denied.

Plaintiffs claim the amount of $15.00 for tennis racquets as a deduction on their 1972 joint tax return. This deduction does not appear on plaintiffs' Form 843 claim filed with the I.R.S. for the 1972 tax year. Furthermore, plaintiffs presented no testimonial or documentary evidence to support such an expense. This claim is, therefore, denied.

### 29 State Income Tax

Plaintiff Frederick Speck claims the amount of $183.00 for state income tax as a deduction on his individually filed 1971 tax return, although the specific state is not listed. This deduction does not appear on plaintiff's individual Form 843 claim filed with the I.R.S. for the 1971 tax year. Furthermore, plaintiff presented no testimonial or documentary evidence to support such

an expense. This claim is, therefore, denied.

Plaintiffs claim the amount of $552.00 as a deduction on their 1972 joint return for state and local income tax, again with no jurisdiction identified. This deduction does not appear on plaintiffs' joint Form 843 claim filed with the I.R.S. for the 1972 tax year. Furthermore, plaintiffs presented no testimonial or documentary evidence to support such expenses. This claim is, therefore, denied.

### 30 Moving Expenses

■ By means of a Form 843 filing, plaintiff Frederick Speck individually claims a $40.00 deduction for amounts allegedly paid for moving expenses for the year 1968. Frederick Speck testified that he always incurred moving expenses in excess of those reimbursed by the Hockey Team going from training camp sites back to his "hometown." [40] Plaintiff Frederick Speck, moreover, testified that such expenses were "under $300.00, it may be $200, $250.... It would be for mileage, gas—that type of thing. Miscellaneous." Plaintiff Frederick Speck, however, failed to specify an exact amount. Plaintiff again failed to produce any documentary evidence in support of his claim for $40.00 set forth on his Form 843 filed with the I.R.S. for the year 1968. Plaintiffs' claim arising from alleged payment of moving expenses is, therefore, denied.

By a joint filing of Standard Form 3903 "Moving Expense Adjustment Form" for the 1972 tax year, plaintiffs claim a deduction in the amount of $350.00 in unreimbursed moving expenses. At trial, plaintiff, Frederick Speck, testified to having moved quite a bit in 1972, but he was unable to state any amount of unreimbursed expenses. He was also unable to produce any documentation to substantiate his claim. This claim is, therefore, denied.

tions reflect calculations utilizing straight line depreciation over a three-year period.

**39.** See footnote 38, immediately above.

**40.** Plaintiff Frederick Speck when he testified did not specify whether "hometown" meant the team's home base city or plaintiffs' "hometown" in Canada.

### 31 Real Estate Tax

■ Plaintiffs claim the amount of $551.00 for real estate tax on their 1972 joint tax return. Although not stated on the tax return, at trial, Frederick Speck conceded that he did not own a home in the United States so that if such taxes were paid, they would have been on his residence in Ontario, Canada:

Q Did you own a home, in the United States, during 1972?

A No.

Q So, if it is real estate taxes, it would have to be on your resident in Ontario?

A I would assume.

Plaintiff, however, failed to provide documentary evidence or credible testimony to support a claim for deduction of any real estate taxes. This claim is, therefore, denied.

### 32 Personal Property (Auto)

■ Plaintiffs claim the amount of $70.00 for personal property tax as a deduction on their 1972 joint tax return. This deduction does not appear on plaintiffs' joint Form 843 claim filed with the I.R.S. for the 1972 tax year. At trial, plaintiff testified that he assumed it was for state taxes of some sort. Plaintiff Frederick Speck, however, presented no documentary evidence to support such an expense. This claim is, therefore, denied.

### 33 Ice Rental

■ Plaintiffs claim, by attachment to their joint 1040 form filed for the year 1972, a deduction in the amount of $50.00 for rental of ice time for practice. At trial, Frederick Speck testified that he had paid for indoor ice time during the summer in Carlisle, Pennsylvania. However, he did not indicate the amount of any payments made. Furthermore, plaintiffs failed to provide any documents or records to substantiate such a payment. This claim is, therefore, denied.

### 34 Negotiation Fee (Tax Planning and Business Advice)

■ By attachment to their 1040 joint return form filed for the year 1972, plaintiffs claim a deduction of $1,100.00 for tax preparation and business advice, for negotiations with the World Hockey League. Plaintiff, Frederick Speck, stated that he had "no idea" how much he had spent for tax preparation in 1972. At trial, it was only upon reviewing the 1040 form in the record that plaintiff was able to form some recollection of the amount allegedly paid. Indeed, the record reflects that plaintiff, when testifying as to the amount paid in 1972 for tax planning was actually reading from page 62 marked as Joint Exhibit 4. Moreover, on cross-examination, the record became more confusing because plaintiff Frederick Speck testified that of the $1,100.00 claimed for tax planning and business advice, part was paid to Don Green for business planning and, about $150.00, was paid to Mr. Abrahams for tax preparation. This raises in the mind of the court the question of potential overlap between this claim and the previously discussed $135.00 claimed under the category "tax preparation." Furthermore, plaintiff was unable to produce any records or documents to substantiate these claims. Plaintiffs' claim for deduction for tax planning and business advice is, therefore, denied.

### 35 Road Trip Expenses

■ In the petition filed to initiate the instant case, plaintiffs also assert claims in the general category of "road trip" [41] ex-

---

**41.** As is further discussed below, plaintiffs' counsel, Charles Abrahams, has a tendency to use terminology interchangeably. Throughout the relevant papers on file in this case the terms "road trip expenses," "away from home expenses" and "team city expenses" reappear. However, plaintiffs' counsel does not always distinguish between these categories. For the purposes of this opinion, the court will use "road trip expenses," only to designate expenses allegedly incurred by a player when travelling from the team's home base city to play for the team in other league cities. The term "away from home" is the term used in 26 U.S.C. § 162(a)(2) to define a certain category of deductible expenses certainly including "road trip expenses." The confusion occurs because of the non-resident alien status of hockey players such as Mr. Speck, who claims to be "away from home" when he is out of Canada in the United States, and is also away from his team home base city when he is on the road travelling with

penses, allegedly incurred pursuant to I.R.C. § 162(a)(2) by Frederick Speck during the 1968, 1969 and 1971 tax years. Although not appearing on their joint 1040NR tax return as originally filed for the 1968 tax year, by reference to Frederick Speck's individually filed Form 843 claim, plaintiffs assert entitlement to a deduction of $1,543.00, ($1,130.00 in employee travel expenses in excess of employer reimbursement, $239.00 for mileage between the usual job site (or practice), and $174.00 for taxicab fares from the job site to the airport for the 1968 tax year). For the 1968 tax year, plaintiff testified that the Central Hockey League's per diem rate while on road travel may have been $8.00 to $10.00, and stated he spent double that amount per day. Plaintiffs failed to produce any documentary evidence or credible testimony to substantiate these claims. These claims are, therefore, denied.

For the 1971 tax year plaintiff, Frederick Speck, filing alone, claimed by attachment to his 1040NR tax return form, entitlement to deductions of $666.00 for "Excess Expenses," as unreimbursed business expenses, $107.00 for "[t]ravel expenses to training sites away from usual job sites" as unreimbursed business expenses, and $72.00 for "[t]ransportation costs to airport and return for travel to scheduled cities" as unreimbursed business expenses. No mention of this category appears in plaintiff Frederick Speck's Form 843 claim. At trial, plaintiff failed to substantiate these expenses either by documentary or testimonial evidence. These claims are, therefore, denied.

Plaintiffs, in their jointly filed Form 1040 for the 1972 tax year, claimed a total of $2,259.64 trip expenses ($1,740.00 for unreimbursed business "Excess Expenses," $314.64 for "[t]ravel expenses to training sites away from usual job sites" and

$205.00 for "[t]ransportation costs to airport and return for travel to above cities"). At trial, plaintiffs also failed to substantiate these claims by either documentary or testimonial evidence. These claims are, therefore, denied.

### 36 Charitable Contributions

■ Plaintiffs seek a deduction, pursuant to 26 U.S.C. § 170 (1964), for charitable contributions made during 1968, 1971 and 1972. Treasury Regulation § 1.170–1(a)(3) (1968) [42] governs the recordkeeping and tax return requirements for deductions claimed for charitable contributions. The section sets forth the following requirements for taxpayers to obtain deductions for charitable contributions made in taxable years after December 31, 1963:

(3) **Information required in support of deductions for taxable years beginning after December 31, 1963—(i) In general.** In connection with claims for deductions for charitable contributions paid in taxable years beginning after December 31, 1963, taxpayers shall state in their income tax returns the name of each organization to which a contribution was made and the amount and date of the actual payment of each contribution. If a contribution is made in property other than money, the taxpayer shall state the kind of property contributed (for example, used clothing, paintings, securities) and shall state the method utilized in determining the fair market value of the property at the time the contribution was made. In any case in which a taxpayer makes numerous cash contributions to an organization during the taxable year, the taxpayer may state the total cash payments made to such organization during the taxable year in lieu of listing each cash contribution and the date of payment.

his team during the hockey season. In this case, plaintiffs have claimed deductions for "team city expenses" for expenses while living in the team base city, away from their home in Canada.

**42.** The text of the 1968 provision is identical to the versions of the C.F.R. applicable to the 1971 and 1972 tax years.

Treas.Reg. § 1.170–1(a)(3).[43]

None of the charitable deductions set forth in plaintiffs' tax returns or claims for refund for 1968, 1971 or 1972 meet all the requirements of Treas.Reg. § 1.170–1(a)(3). Plaintiffs have failed to state or offer evidence regarding the specific name of the organization to which plaintiffs made a contribution, and the amount and date of actual payment of each such contribution claimed as a deduction.

■ For the 1968 tax year, plaintiffs, Frederick and Linda Speck, claimed, on their jointly filed 1040NR tax return, $100.00 for "U.S. Churches and Organized Charities." At trial, Frederick Speck testified to having made in the "neighborhood of $100, $150" in charitable contributions in the 1968 tax year, but he was not able to offer a precise, aggregate amount of the cash contributions made to any one charity. No receipts were presented to substantiate Frederick Speck's statement. Indeed the only exhibit submitted in the trial record to substantiate the charitable deduction claim was the plaintiffs' joint Form 1040NR for tax year 1968. Frederick Speck testified "it would have been in the neighborhood of $100, $150." Moreover, in the Form 843 for tax year 1968, filed by Frederick Speck alone, plaintiff concedes that credit was received for the $100.00 claimed on the plaintiffs' jointly filed Form 1040NR tax return. Therefore, despite plaintiffs' assertion on their tax form and in their post-trial brief, plaintiffs' claim for the 1968 tax year must be dismissed as having already been allowed to plaintiffs. Moreover, even if plaintiffs' claims for charitable deductions for 1968 had not already been credited, this claim would still be denied on the alternate grounds of failure to substantiate.

For the 1971 tax year, on his individually filed Form 1040NR, plaintiff Frederick Speck claimed a deduction for "U.S. Charitable Contributions (Church & Miscellaneous)" in the amount of $164.00. No claim was asserted in plaintiff Frederick Speck's individually filed Form 843 claim. With respect to the 1971 tax year, Frederick Speck testified that the amount: "probably was a little more than it had been, in the previous years" and estimated it at $225.00. By reading from the trial exhibit, he stated that he had spent $164.00 in 1971. During his trial, Mr. Speck testified that he had spent in the "... $100–$150 range. Somewhere in there." He also testified that he could not remember the charities to which he made contributions. The testimony offered was as follows:

Q. Now, under U.S. charitable contributions, it indicates "Church and Miscellaneous".

Which church would that have been?

A. This was—

Q. This would be your 1971 return.

A. Okay. That would have been a combination of about four churches, in that particular year.

Q. Okay. Can you give me the names of the four churches?

A. I'm a member of the United Church here. And it would have been Lutheran churches that we were attending in the U.S.

Q. But do you know the names, of any specific four churches?

A. No, I'm sorry.

Q. Okay. Do you know how much, you would have given, to each of the four churches?

A. Breaking it down by church?

Q. By church.

A. No, sir. I wouldn't.

Q. Okay. And it says, "... Miscellaneous". "Church and Miscellaneous". What is the miscellaneous?

A. That may have been youngsters coming to the door, selling. Cancer. Stuff for diabetes. Tickets. Something of that nature.

For the 1972 tax year, plaintiffs claimed a deduction in the amount of $164.00 allegedly paid to the "St. Paul Methodist

---

**43.** Defendant cites Treas.Reg. § 1.170A–13(a)(1)(iii), but this section applies only to taxable years after December 31, 1982.

Church" in their joint 1040 tax return. The court notes that on plaintiffs' 1972 joint 1040 tax return, plaintiffs listed contributions of $164.00 to St. Paul Methodist Church, but failed to state the date of payment. This 1972 claim was not the subject of a Form 843 filing. In addition, during Mr. Speck's trial testimony, the following dialogue occurred:

Q. Do you know how much you spent, for charity, in 1971?

A. It probably is about the same, every year, for me. Back then, it would be $100, $150 range. Somewhere in there.

Mr. Speck's testimony regarding charitable contributions was extremely vague and, thus, does not support plaintiffs' claims for deduction. Plaintiffs' claims for deductions cannot stand in the absence of some documentary or testimonial support. Therefore, this court denies plaintiffs' claims for deductions in regard to charitable contributions for the years 1968, 1971 and 1972.

The court finds, based on its opportunity to observe the plaintiff Frederick Speck during trial, that his testimony with respect to all of the deductions claimed by plaintiffs was vague, subject to memory lapses, and required frequent references to the record to refresh his recollection. Furthermore, despite contrary representations made to the court up to the day of trial, Mr. Speck did not produce any witnesses to corroborate his testimony. Moreover, Linda Speck, the other named plaintiff in this case, did not even appear for the trial, much less testify. In fact, plaintiffs produced only one witness, namely, plaintiff Frederick Speck, and extremely limited documentation at the trial. As a result, this court finds the evidence and testimony offered by plaintiffs unpersuasive, overly general and insufficiently probative to merit any judgment in plaintiffs' favor.

*Introduction of Transcript Testimony from the United States Tax Court*

After failing to present either testimonial or documentary evidence during the trial to substantiate their claims, plaintiffs' counsel attempted in the post-trial brief [44] to introduce transcript testimony of three individuals, Peter Elson, Howard Greer, and Dr. Earl Franklin Hoerner, given during the trial of hockey player plaintiffs in the United States Tax Court to support the "ordinary and necessary" aspects of the various deductible expenses.[45] Moreover, plaintiffs attempted to introduce this transcript testimony as the testimony of expert witnesses. Plaintiffs assert that there is a motion pending to admit this transcript testimony given in the United States Tax Court as expert testimony in the Claims Court proceeding to establish that various conditioning activities were "appropriate and helpful." Furthermore, plaintiffs' counsel alleges that the transcripts of the Tax Court testimony "form part of the record in this Court as the transcripts were submitted for filing on or before September 23, 1985 in support of the motion for Partial Summary Judgment [on the income allocation issue] in this case."

The issue of whether the court should allow the introduction of the transcript of the Tax Court testimony as expert testimony, in the Group I trials, including in the *Speck* case, was raised several times during the week spent in Boston for the Group I trials. Although mention of the issue was made during the *Speck* trial, perhaps the clearest discussion occurred during the trial of *Gilles Marotte,* Case No. 531–76, also a Group I case. The colloquy at the *Marotte* trial on the use of the transcript of the Tax Court testimony was as follows:

MR. ABRAHAMS: The Tax Court testimony, I believe, has been submitted to

---

**44.** Although plaintiffs' post-trial brief was filed by leave of the court, plaintiffs' counsel, Charles L. Abrahams, who signed the brief originally submitted as "Counsel for Plaintiff [sic]," filed the plaintiffs' brief late, included an incorrect docket number on the document, and failed to include an index, as required by the rules of the court.

**45.** Although the copy of the testimony provided to this court is not clearly marked with respect to witnesses Green and Hoerner, the testimony appears to have been offered in the cases of *John J. Hanna,* Case No. 3486–76, and *Peter Stemkowski,* Case No. 4239–75, in the United States Tax Court.

the Court in relationship to the Motion for Summary Judgment.

THE COURT: So what you are proposing to have included in the record of a particular one of these cases, each of these cases?

MR. ABRAHAMS: All of them.

THE COURT: All of the above, Marotte, Speck, Bailey and Favell? I mean, I am operating at a complete disadvantage because I do not have it in front of me. Do you have it to show me?

MR. ABRAHAMS: It is voluminous. I did not bring it.

THE COURT: You did not bring it? And yet, you want to use it at the trial, and you did not bring it with you.

MR. ABRAHAMS: Your Honor, I explained it.

THE COURT: Mr. King, I assume you do not have it either because this is a complete surprise to both you and me that this is what Mr. Abrahams was going to try to do. Why do you not, when you go back to Washington, review this? Mr. Abrahams, I will ask that you file a brief one page Motion to include this testimony. Again, you can file it on the thirteenth [of December, 1991]. It does not have to [be] more than a couple of lines. Mr. King, you will have a simultaneous filing date on the thirteenth to respond. If you do not object—

MR. KING: Your Honor, I can state right now the Government's position. That is that we will not agree to submitting Tax Court testimony of these witnesses. We will agree, to the extent that the witnesses' testimony would be uniform, to take them in connection with one trial and apply that testimony to the other trial, so that the expert only has to testify once. But, Your Honor, I can tell you right now that the Government will object to taking testimony from a witness when it has no opportunity to examine that witness.

The court then directed counsel that they should try to work together to address the possibility raised by plaintiffs' counsel of stipulating to admission of transcript testimony, including, if appropriate, transcripts

of proceedings in the Tax Court. The court indicated, however, that since the possibility of using the transcripts of the Tax Court testimony had not been raised with defendant's counsel or with the court by plaintiffs' counsel prior to the commencement of the Group I trials, the record of the Group I trial proceedings would be closed when those trials were concluded in Boston. Plaintiffs' counsel would have the option of filing a motion to ask the court to reopen the record to admit the testimony. The court, however, clearly indicated that it reserved the right, after reviewing any motion filed, to deny admittance of any additional evidence once the trials in Boston had been completed and the record was closed.

On December 13, 1991, plaintiffs filed a motion to open the record to admit as expert testimony the transcript testimony presented in the United States Tax Court by the three witnesses: Elson, Greer, and Hoerner. Beyond the names of the purported experts and the dates of their testimony in the United States Tax Court, no additional descriptions were given to indicate why any of these individuals might be entitled to the expert designation. In one paragraph of the plaintiffs' submission, counsel indicated that this court should use the record of the previous testimony because: "These expert witnesses have been cross-examined by District Court on behalf of the Commissioner and the witnesses, if called, will merely repeat the testimony already given in the Tax Court for the same purpose as that enunciated in this Motion." This court is unaware of any trial on related issues in a District Court, although many of the hockey players did file in the United States Tax Court, and at least two of the cases were appealed to the United States Courts of Appeals for the Second and Fourth Circuits.

In response to plaintiffs' motion to admit the transcript testimony from the United States Tax Court, defendant filed an opposition, to which plaintiffs then filed a reply. In the defendant's opposition, the government argued that plaintiffs' failure to include these purported expert witnesses on

either their original or amended witness lists was a violation of the rules of this court, Appendix G, paragraphs 10(b) and 12(a), and that plaintiffs' failure to file a motion for leave to use the transcripts of the testimony of the three prior to the trial also violated Rule 12(b) of this court.

Contrary to the assertion of plaintiffs' counsel that the motion had not been decided, at a status conference of February 20, 1991, the court had denied admission of the transcripts of the testimony offered in the United States Tax Court by Elson, Greer and Hoerner. Moreover, on the same day, the court had issued a written order confirming the denial, as follows:

(1) the testimony of the three purported expert witnesses was given 14 years ago, in another proceeding, in another court, with respect to a party other than the plaintiff, and is inadmissible hearsay under Fed.R.Evid. 801 and 804.

(2) plaintiff did not include the purported expert witnesses on either his original or amended witness list in 'flagrant violation' of RUSCC Appendix G, paragraphs 10(b) and 12(a).

(3) plaintiff violated RUSCC Appendix G, paragraph 12(b) because he did not file a motion for leave to use transcripts of the purported experts' testimony prior to the trial of this case.[46]

■ At this time, as discussed more fully below, this court reiterates its position that the transcripts of the testimony offered by witnesses Greer, Elson and Hoerner, in the 1977 United States Tax Court proceedings should be excluded. Although Rule 804 of the Federal Rules of Evidence contemplates exceptions for the use of prior testimony, the instant testimony fails to meet the elements necessary to be admissible under the Rule 804 exception to the hearsay rule. Specifically, plaintiff failed to allege that the witnesses in question were unavailable to testify. Indeed the record reflects no attempt by plaintiffs' counsel, Charles Abrahams, to obtain such testimony, or that the witnesses for whom transcript testimony was proposed to be introduced were unavailable. Moreover, because the testimony in the transcripts at issue was apparently offered in tax cases brought by John J. Hanna and Peter Stemkowski, it is quite possible that these same witnesses might have offered different testimony regarding plaintiffs Linda and Frederick Speck, or in the trials of any of the other Group I plaintiffs. Therefore, defendant's insistence on its right to cross-examination is well founded.

Furthermore, the court agrees with the skepticism expressed by defendant's counsel in his motion in opposition to admit the testimony of Elson, Green and Hoerner.

[T]here are many facts material to plaintiffs' request which were unknown to defendant until recently, and of which the Commissioner was unaware in 1977. For example defendant has learned that plaintiffs' counsel is often unable to produce accurate copies of original documents. Plaintiffs' counsel has submitted incorrect factual responses to discovery. This is significant because expert testimony is dependent upon the accuracy of the facts provided to the expert. In light of the history of the 'hockey player cases' defendant's counsel now must question in greater detail the accuracy and reliability of any facts provided by plaintiffs' counsel to their purported experts. Therefore, defendant requires an opportunity to cross-examine those witnesses and believes denial of that opportunity is prejudicial to the presentation of its case. In any event, the criteria for admission of prior testimony under Fed. R.Evid. 804(b)(1) have not been met in this case.

Given the circumstances presented in the instant case, the court also prefers live testimony by the live witnesses at the trial, so that the witnesses can be cross-examined and observed by the judge to aid in the assessment of their credibility.

■ The first specific notice that Mr. Abrahams wished to introduce transcript excerpts from the testimony of witnesses Elson, Greer and Hoerner before the Unit-

---

**46.** Although paragraph 12(b) of Appendix G of the rules of this court speaks specifically to deposition transcript testimony, the analogy to trial transcript testimony remains valid.

ed States Tax Court at each of the Group I trials occurred during the *Marotte* trial on December 4, 1991, after three days of the Group I trials. Plaintiffs' counsel had failed to list the names of these three purported experts on either their original witness list in any of the Group I trials, filed on November 8, 1991, or on the amended witness lists, filed on November 18, 1991. In fact, plaintiffs' counsel gave no indication that he intended to call any experts during the upcoming Group I trials and did not identify the names of those witnesses until December 5, 1991, the last day of those Group I trials. Moreover, plaintiffs' counsel indicated that he never had intended to call those witnesses at the Group I trials and had made no attempt to have them present for the trial, in violation of the rules of this court. Plaintiffs' counsel has not offered any "compelling" reason, or for that matter any reason, as required by Appendix G, paragraph 12(a), of the rules of this court to allow admission of the testimony of the witnesses at such a late date.

■ Mr. Abrahams also maintained that because these Tax Court transcripts had been filed by him as part of the appendix in the earlier motion for partial summary judgment on the income allocation issue, the transcripts of the testimony of Elson, Greer and Hoerner had become a part of the record of the related hockey player tax refund cases. The fact that plaintiffs filed the transcripts of the United States Tax Court testimony as exhibits to its motion for partial summary judgment, however, does not automatically establish that the exhibits can be used in lieu of live testimony at trial. In fact, in the presence of this judge, at the oral argument on the motion for partial summary judgment on the income allocation issue, Gilbert Rubloff, defendant's counsel at the time, agreed that the court should accept the plaintiffs' version of the facts as submitted *only* for the purposes of deciding the cross-motions for partial summary judgment. (See *Favell v. United States*, 16 Cl.Ct. 700,

704 (1989).) Defendant's counsel, by agreeing to use plaintiffs' version of the facts for the purposes of the motions for partial summary judgment, clearly did not waive the government's right to contest the validity of the facts of the individual cases at trial. The issue of how to proceed towards trial, or otherwise, following disposition of the cross-motions for partial summary judgment was deferred for resolution during further proceedings.

■ Moreover, this court's order of February 20, 1992, excluding the transcripts of the United States Tax Court trial testimony of witnesses Elson, Greer and Hoerner, given in the United States Tax Court, is consistent with RUSCC 37.[47] Rule 37 sets forth the measures by which failure to comply with an order of the court may be addressed. On October 23, 1991, the parties were ordered to exchange a list of names and addresses of witnesses to be called at trial. Plaintiffs' counsel, Charles Abrahams, however, not only included many witnesses who ultimately did not appear to testify at trial on plaintiffs' list, but he failed to list the names of the three purported expert witnesses, Elson, Greer and Hoerner, or to indicate that he might wish to introduce transcript testimony of these witnesses, in plaintiffs' original witness list filed with the court on November 8, 1991, or in the amended witness list filed by plaintiffs on November 18, 1991. Indeed, it was not until December 5, 1991, the final day of the Group I trials, that plaintiffs' counsel informed the court of the identity of the proposed expert witnesses, whose transcript testimony counsel wished to include in the record. Clearly, failure to notify the court or defendant of proposed witnesses, as required by the rules of this court, constitutes a violation of Rule 37.

Rule 37(b)(2)(B) permits the court to make such orders regarding a failure to comply with a court order, including:

(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting

---

47. This case was tried at a time when the court was still the United States Claims Court and, therefore, the rules were still referred to as RUSCC.

such party from introducing designated matters in evidence;

RCFC 37(b)(2)(B). Because the language set forth in this rule is identical to the language included in the corresponding Federal Rule of Civil Procedure, this court has relied on the interpretation of the United States Supreme Court and of other United States circuit courts of the Federal Rules of Civil Procedure for guidance.

The United States Supreme Court in *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976) made clear that determining whether actions pursuant to Rule 37 are appropriate is a matter delegated to the discretion of the trial court. *Id.* at 642, 96 S.Ct. at 2780. Furthermore, the type of action to be taken is similarly within the discretion of the trier of fact. In reaching this conclusion, the Court noted that such discretion is appropriate because:

the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.

*Id.* at 643, 96 S.Ct. at 2781. In *National Hockey,* the Supreme Court affirmed the sanction of dismissal imposed by a district court, certainly among the more severe of the measures set forth in Rule 37. The Supreme Court also adopted, by reference, a portion of the language from the opinion of the district court reciting conduct which resulted in appropriate dismissal by that district court:

After seventeen months where crucial interrogatories remained substantially unanswered despite numerous extensions granted at the eleventh hour and, in many instances, beyond the eleventh hour and notwithstanding several admonitions by the Court and promises and commitments by the plaintiffs, the Court must and does conclude that the conduct of the plaintiffs demonstrates the callous disregard of responsibilities counsel owe to the Court and to their opponents. The practices of the plaintiffs exemplify flagrant bad faith when after being expressly directed to perform and act by a date certain, *viz.,* June 14, 1974, they failed to perform and compounded that noncompliance by waiting until five days afterwards before they filed any motions.

*National Hockey League v. Metropolitan Hockey Club,* 427 U.S. at 640, 96 S.Ct. at 2779–80 (quoting 63 F.R.D. 641, 656 (1974)). There is a striking similarity between the facts in the instant case and those in the case cited immediately above. The abuses of counsel in the case at bar, however, appear to be even more flagrant. Exclusion of expert testimony by trial courts in instances when counsel has ignored orders of the court with respect to discovery, or has failed to make a timely identification of witnesses prior to trial, has been affirmed by several federal appellate courts. *Lund v. Albrecht,* 936 F.2d 459, 466 (9th Cir. 1991); *LCA Corp. v. Shell Oil Co.,* 916 F.2d 434, 440 (8th Cir.1990); *Port Terminal & Warehousing v. John S. James Co.,* 695 F.2d 1328, 1335 (11th Cir.1983).

In a comprehensive discussion, the United States Court of Appeals for the Seventh Circuit affirmed the determination of a district court that barring the use of expert testimony pursuant to Rule 37(b)(2)(B) was an appropriate sanction for a wilful disregard of orders of the district court with respect to discovery including the filing of expert witness lists and responses to interrogatories. *Parker v. Freightliner Corp.,* 940 F.2d 1019, 1024–25 (7th Cir.1991). Notable among the violations of counsel in *Parker* was the failure to timely file pretrial materials or answer interrogatories requesting the names of any expert witnesses to be called at trial. *Id.* at 1025. In its opinion, the circuit court set forth the legal authority upon which it upheld the decision of the trial court to impose sanctions:

As we have stated in the past, '[j]udges must be able to enforce deadlines,' *In re Kilgus,* 811 F.2d 1112, 1118 (7th Cir. 1987) (discussing sanction of default), and Rule 37(b) sanctions provide the district court with one means for assuring

that dilatory litigants timely comply with its discovery orders. *Tamari v. Bache & Co. (Lebanon) S.A.L.*, 729 F.2d 469, 475 (7th Cir.1984). We will therefore overturn a district court's imposition of Rule 37(b) 'sanctions only where the court has abused its discretion.' *Id.* at 472 (citing *National Hockey League v. Metro Hockey Club*, 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976); *Hindmon v. National–Ben Franklin Life Ins. Co.*, 677 F.2d 617, 620 (7th Cir.1982)). Moreover, because the district court is in the best position to determine whether a party has complied with its discovery orders, the district court's discretion is properly broad. *Tamari*, 729 F.2d at 472; *Loctite Corp. v. Fel–Pro, Inc.*, 667 F.2d 577, 582 (7th Cir.1981); *Patterson v. Coca–Cola Bottling Co.*, 852 F.2d 280, 283 (7th Cir. 1988) (trial court's sanctions will not be set aside unless no reasonable person could agree with the trial court's assessment of the issue under consideration (citing *3 Penny Theater Corp. v. Pitt Theatres, Inc.*, 812 F.2d 337, 339 (7th Cir.1987).

*Id.* at 1024–25. Furthermore, the *Parker* court noted that " 'a district court is not required to fire a warning shot,' " and that the trial can impose the sanction of barring counsel from calling expert witnesses to testify, although it had not warned counsel that it might do so. *Id.* at 1025 (quoting *Hal Commodity Cycles Management Co. v. Kirsh*, 825 F.2d 1136, 1139 (7th Cir. 1987)).

▋ The United States Court of Appeals for the Ninth Circuit reached the same result and excluded testimony of an expert witness because counsel had failed to properly identify, list, and designate a witness as an expert. *Lund v. Albrecht*, 936 F.2d at 466. In support of its opinion, affirming the district court decision, the court of appeals noted that in making such determinations, a district court has broad discretion in admitting and excluding expert testimony. *Id.* (citing *Taylor v. Burlington N. R.R. Co.*, 787 F.2d 1309, 1317 (9th Cir.1986)). Thus, the decision of the trial court will be sustained unless "manifestly erroneous," *id.*, or unless the court

has abused its discretion. *Parker v. Freightliner Corp.*, 940 F.2d at 1024.

Similarly, the United States Court of Appeals for the Eighth Circuit affirmed a trial court's exclusion of expert testimony on the basis that designation of the witness three months after the close of discovery, and seven days prior to trial, was untimely. *LCA Corp. v. Shell Oil Co.*, 916 F.2d at 440. In support of this ruling, the circuit court recognized the discretion accorded the district court in making such a determination, and further noted the appropriateness of sanctions in light of the fact that the counsel in question possessed the information required to designate an expert witness long before the close of discovery. *Id.* (citing *Minnkota Power Cooperative, Inc. v. Manitowoc Co.*, 669 F.2d 525, 528–29 (8th Cir.1982)).

As in *Shell Oil*, counsel for the plaintiffs in the *Speck* case, Mr. Abrahams, had the necessary information to designate expert witnesses long before the close of discovery. The trials in the United States Tax Court from which plaintiffs' counsel proposed to introduce transcript testimony took place in 1977. Thus, plaintiffs' counsel, Charles Abrahams, cannot claim he was unaware of the testimony he proposed to offer. Indeed, the appending of this same Tax Court transcript to plaintiff's motion for summary judgment reflects Mr. Abrahams awareness of the availability of such testimony. In further support of this court's decision to exclude the Tax Court transcript testimony of the purported expert witnesses, this court notes that the violations in the instant *Speck* case are more egregious and greater in number than those set forth by the United States Courts of Appeals in the cases discussed above. The court, therefore, reaffirms its earlier conclusion that, in accordance with clearly stated Supreme Court precedent and authority articulated by multiple circuit courts of appeal, the transcripts of testimony offered by the proposed witnesses Elson, Greer and Hoerner should be excluded.

### Proof of Deductions Absent Adequate Records

If plaintiffs do not have adequate records in their possession, as required by the rules for substantiation included in Treas. Reg. § 1.274–5(c)(2) (1968),[48] they may prove entitlement to a deduction only if they offer specific and detailed testimony as to each element of each expense, and they set forth additional sufficient documentary or testimonial evidence, to corroborate their testimony in accordance with Treasury Regulations. *See* Treas.Reg. § 1.274–5(c)(3); Treas.Reg. § 1.162–17(d)(3). Subsections (3) and (4) of Treas. Reg. § 1.274–5(c) state in pertinent part:

(3) *Substantiation by other sufficient evidence.* If a taxpayer fails to establish to the satisfaction of the district director that he has substantially complied with the "adequate records" requirements of subparagraph (2) of this paragraph with respect to an element of an expenditure, then, except as otherwise provided in this paragraph, the taxpayer must establish such element:

(i) By his own statement, whether written or oral, containing specific information in detail as to such element; and

(ii) By other corroborative evidence sufficient to establish such element. If such element is the description of a gift, or the cost, time, place, or date of an expenditure, the corroborative evidence shall be direct evidence, such as a statement in writing or the oral testimony of persons entertained or other witness setting forth detailed information about such element, or the documentary evidence described in subparagraph (2) of this paragraph. If such element is either the business relationship to the taxpayer of persons entertained or the business purpose of an´expenditure, the corroborative evidence may be circumstantial evidence.

(4) *Substantiation in exceptional circumstances.* If a taxpayer establishes that, by reason of the inherent nature of

the situation in which an expenditure was made:

(i) He was unable to obtain evidence with respect to an element of the expenditure which conforms fully to the 'adequate records' requirements of subparagraph (2) of this paragraph,

(ii) He is unable to obtain evidence with respect to such element which conforms fully to the 'other sufficient evidence' requirements of subparagraph (3) of this paragraph, and

(iii) He has presented other evidence, with respect to such element, which possesses the highest degree of probative value possible under the circumstances, such other evidence shall be considered to satisfy the substantiation requirements of section 274(d) and this paragraph.

Treas.Reg. §§ 1.274–5(c)(3) & 1.274–5(c)(4) (1968).[49]

Treas.Reg. § 1.162–17(d)(3), which sets forth the standards for the reporting and substantiation of certain business expenses of employees when records are incomplete, or documentary proof is unavailable, states:

Where records are incomplete or documentary proof is unavailable, it may be possible to establish the amount of the expenditures by approximations based upon reliable secondary sources of information and collateral evidence.... Since detailed records of incidental items are not required, deductions for these items may be based upon reasonable approximation. In cases where a taxpayer is called upon to substantiate expense account information, the burden is on the taxpayer to establish that the amounts claimed as a deduction are reasonably accurate and constitute ordinary and necessary business expenses paid or incurred by him in connection with his trade or business.

---

**48.** The text of the 1968 provision is identical to the versions of the C.F.R. applicable to the 1971 and 1972 tax years.

**49.** The text of the 1968 provision is identical to the versions of the C.F.R. applicable to the 1971 and 1972 tax years.

Treas.Reg. § 1.162–17(d)(3) (1968).[50]

█ Plaintiff Frederick Speck's testimony, and any corroborating testimony of third parties, must be specific and detailed about each of the requirements (time and place of travel or entertainment, or date and description of a gift) and, as set forth in Treas.Reg. § 1.274–5(b)(2), must be based on a recording of the expense made at or near the time of the expenditure, or on a detailed statement by the taxpayer, together with sufficient corroborating evidence of the specific expenditures, and must have a high degree of probative value. *Meridian Wood Prods., Inc. v. United States*, 725 F.2d 1183, 1189–90 (9th Cir. 1984). Furthermore, the taxpayers bear the burden of proving each element of a deduction with specificity. Thus, the plaintiffs must set forth records or other reliable evidence to corroborate his/her specific testimony about the amount, time, place and business purpose of each expense for which a deduction is claimed. *Sartin v. United States*, 5 Cl.Ct. 172, 177 (1984); *see also Danville Plywood Corp. v. United States*, 16 Cl.Ct. at 595–97; *L.W. Hardy Co. v. United States*, 1 Cl.Ct. at 470–71. Courts have rejected claims for deductions with far more supportive corroboration than was offered in the instant *Speck* case. In light of this stringent standard, Mr. Speck's vague testimony, unsupported by records or other corroborative testimony, does not even approach satisfying the requirements of the applicable regulations requiring substantiation of claimed expenses.

█ At trial, Frederick Speck testified that his records were thrown out by his wife. Furthermore, when his counsel, Charles Abrahams, asked him on direct examination about his lack of records, he testified that he had kept them for an unspecified amount of time but that they were thrown out in 1985. He also testified, however, that he had been told by Mr. Abrahams "[t]hat there had been an agreement reached. There would not be a need

for documentation, of the different things, that I—I had been saving, at the time" because there had been a agreement of some sort. In their post-trial briefs, plaintiffs argue that the records were thrown out in error and, therefore, pursuant to Treas.Reg. § 1.274–5(c)(5), they should be relieved from the requirement in Treas. Reg. § 1.274–5(c)(2), that they maintain adequate records. Treas.Reg. § 1.274–5(c)(5) reads:

> (5) *Loss of records due to circumstances beyond control of taxpayer.* Where the taxpayer establishes that the failure to produce adequate records is due to the loss of such records through circumstances beyond the taxpayer's control, such as destruction by fire, flood, earthquake, or other casualty, the taxpayer shall have a right to substantiate a deduction by reasonable reconstruction of his expenditures.

Treas.Reg. § 1.274–5(c)(5) (1968).[51] However, in order for the exception in Treas. Reg. § 1.274–5(c)(5) to apply, a taxpayer must prove that: (1) the taxpayer had records which would have adequately substantiated his or her expenses, and (2) that those records were destroyed or lost in a casualty "beyond the taxpayer's control." Treas.Reg. § 1.274–5(c)(5). In the case at bar, there is no evidence of the occurrence of a casualty or of the nature of the records which were thrown out, beyond some testimony to indicate that at least some of the records disposed of by plaintiffs were summaries of tax information. The plaintiffs' records appear to have been misplaced or thrown away by plaintiffs during the course of the intervening years, but there is no evidence that the loss of the records was "beyond the control of the taxpayer." When a taxpayer merely loses or misplaces his or her records, or entrusts those records to a third party who loses them, Treas.Reg. § 1.274–5(c)(5) does not apply because there is no casualty-like occurrence beyond the control of the taxpay-

---

**50.** The text of the 1968 provision is identical to the versions of the C.F.R. applicable to the 1971 and 1972 tax years.

**51.** The text of the 1968 provision is identical to the versions of the C.F.R. applicable to the 1971 and 1972 tax years.

er. *Murray v. Commissioner*, T.C.Memo 1980–500, 41 T.C.M. (CCH) 337, 339, 1980 WL 4326 (1980). *See also Worden v. Commissioner*, T.C.Memo 1981–366, 42 T.C.M. (CCH) 399, 402, 1981 WL 10668 (1981); *Luben v. Commissioner*, T.C.Memo 1978–198, 37 T.C.M. (CCH) 850, 853, 1978 WL 2892 (1978); *Gizzi v. Commissioner*, 65 T.C. 342, 345–46, 1975 WL 3007 (1975).

■ The joint exhibits and plaintiffs' exhibits introduced at the trial, including the answers to interrogatories, copies of employment contracts, excerpts from the Hockey Register, and claims for refund, do not corroborate plaintiff's testimony regarding plaintiffs' claims for refund. Indeed, Mr. Speck admitted during his testimony that most of the amounts he claimed as deductions were merely "guesstimates" and "approximations" of his actual expenses. Furthermore, plaintiff admitted that the records he had kept for the years at issue would not have been very good. During the trial, Mr. Speck admitted that the amounts claimed as deductions for "Unreimbursed Away from Home Expenses" were calculated by using a per diem figure rather than adding the actual expenses themselves. Mr. Speck stated that "my understanding was, that without having all the proper documents, that that was legally allowed. So, that was where the government figure came about." When defendant questioned Mr. Speck as to how he got the idea that he could use a per diem amount, he replied that he was told so by his tax consultant, Mr. Charles Abrahams, who also represents the plaintiffs in the case currently before the court.

Plaintiffs' counsel, Mr. Abrahams, in a misunderstanding of the applicable law, argues that when there is a reimbursement policy, the taxpayer may elect to use the per diem rate rather than substantiate actual expenses. The court, however, notes that Treas.Reg. § 1.274–5T only applies to taxable years beginning on, or after, January 1, 1986. Treas.Reg. § 1.274–5T(a). The court also notes that even under the newer Treasury Regulation, the Commissioner's decision to allow the plaintiff to use the per diem rate is discretionary on the part of the Commissioner, and not obligatory. Treas.Reg. § 1.274–5T(g). Therefore, this court should not allow plaintiffs to use the per diem rate, for years prior to 1986, in a case in which the plaintiff has testified as to the vagueness of his independent recollection of the documents claimed.

## The Cohan Rule

■ In his post-trial memorandum, plaintiffs' counsel, Charles Abrahams, asserts that the rule articulated in *Cohan v. Commissioner*, 39 F.2d 540 (2d Cir.1930), known as the *Cohan* rule, applies to this case, thereby allowing plaintiffs to prove entitlement to deductions for business related expenses relating to entertainment and travel by setting forth testimony estimating their expenditures on such items. In *Cohan*, the United States Court of Appeals for the Second Circuit allowed the plaintiff to make a reasonable approximation of deductions, through the use of detailed evidence of the amount of his expenditures, even though the taxpayer could not establish the exact amount of the deduction. *Cohan v. Commissioner*, 39 F.2d at 544.

Plaintiffs' reliance on *Cohan*, however, is misplaced. Indeed, I.R.C. § 274 was enacted in response to the *Cohan* decision in 1930, and in response to widespread abuse of expense account deductions. 26 U.S.C. § 274 (1964)[52] The language of section 274(d) disallows certain entertainment, travel, and gift expenses otherwise allowable under 26 U.S.C. § 162, and also imposes the following specific substantiation requirement:

(d) Substantiation required

No deduction or credit shall be allowed—

(1) under section 162 or 212 for any traveling expense (including meals and lodging while away from home),

(2) for any item with respect to an activity which is of a type generally con-

---

**52.** The text of this provision is identical to the 1970 version of the official Code applicable to the 1971 and 1972 tax years.

sidered to constitute entertainment, amusement, or recreation, or with respect to a facility used in connection with such an activity, or

(3) for any expense for gifts, *unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement* (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, or use of the facility or property, or the date and description of the gift, (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, using the facility, or receiving the gift. The Secretary or his delegate may by regulations provide that some or all of the requirements of the preceding sentence shall not apply in the case of an expense which does not exceed an amount prescribed pursuant to such regulations.

26 U.S.C. § 274(d) (emphasis added).

In *Danville Plywood Corp. v. United States*, 899 F.2d 3 (Fed.Cir.1990), the United States Court of Appeals for the Federal Circuit explained the substantiation requirements for entertainment expenses under 26 U.S.C. § 274:

> Prior to 1961, § 162 was the sole statutory provision regulating the deduction of entertainment expenses. In response to what was perceived as widespread abuse of expense accounts and entertainment expenses Congress enacted § 274. This provision is referred to as a "disallowance provision" and its effect is to disallow certain deductions for entertainment expenses which would otherwise be properly deductible under § 162.

> Under the stricter limitations of § 274, no deduction for business expenses allowable under § 162 shall be allowed unless the taxpayer establishes that the item was "directly related to" or "associated with" the active conduct of the taxpayer's trade or business. In the case of the latter situation the item for which the deduction is claimed must directly precede or follow a substantial and bona fide business discussion. 26 U.S.C. § 274(a)(1)(A).

> Therefore, to be deductible, an entertainment expense must meet the requirements of both § 162 and § 274. First, the expense must be an ordinary and necessary business expense under § 162. Second, the expense must be either 'directly related to' or 'associated with' the active conduct of the taxpayer's business.

*Danville Plywood Corp. v. United States*, 899 F.2d at 7.

Treas.Reg. § 1.274–5 provides that no deduction shall be allowed for travelling, entertainment or gifts unless the taxpayer sets forth substantiation for each expenditure. Subsection 1.274–5(c), states:

> (c) *Rules for substantiation*—(1) *In general.* A taxpayer must substantiate each element of an expenditure (described in paragraph (b) of this section) by adequate records or by sufficient evidence corroborating his own statement except as otherwise provided in this section. . . . A record of the elements of an expenditure made at or near the time of the expenditure, supported by sufficient documentary evidence, has a high degree of credibility not present with respect to a statement prepared subsequent thereto when generally there is a lack of accurate recall. Thus, the corroborative evidence required to support a statement not made at or near the time of the expenditure must have a high degree of probative value to elevate such statement and evidence to the level of credibility reflected by a record made at or near the time of the expenditure supported by sufficient documentary evidence. The substantiation requirements of section 274(d) are designed to encourage taxpayers to maintain the records, together with documentary evidence, as provided in subparagraph (2) of this paragraph. To obtain a deduction for an expenditure for travel, entertainment, or gifts, a taxpayer *must* substantiate, in accordance with the provisions of this paragraph, *each element* of such an expenditure. (emphasis added)

Treas.Reg. § 1.274–5(c). The rejection of the *Cohan* doctrine by enactment of 26 U.S.C. § 274(d) is directly addressed in Treas.Reg. § 1.274–5(a):

This limitation supersedes with respect to any such expenditure the doctrine of *Cohan v. Commissioner* (C.C.A.2d 1930) 39 F.2d 540. The decision held that, where the evidence indicated a taxpayer incurred deductible travel or entertainment expense but the exact amount could not be determined, the court should make a close approximation and not disallow the deduction entirely. *Section 274(d) contemplates that no deduction shall be allowed a taxpayer for such expenditures on the basis of such approximations or unsupported testimony of the taxpayer.*

Treas.Reg. § 1.274(a)(3) (emphasis added).

In *Dowell v. United States*, 522 F.2d 708, 714 (5th Cir.1975), the United States Court of Appeals for the Fifth Circuit discussed the substantiation requirement included in 26 U.S.C. § 274(d) and stated that a deduction should be disallowed entirely if such substantiation is lacking:

Pursuant to authority granted in § 274(h), Treasury Regulation 26 CFR § 1.274–5 amplifies these substantiation requirements. It provides that each element of each separate expenditure be supplied either through adequate records or through the taxpayer's own statement plus corroborative evidence sufficient to establish each element. § 1.274–5(c)(3)(i) and (ii). These requirements are based solidly on legislative history.

In short, § 274(d) requires taxpayers to substantiate—either through adequate records or through their own statements corroborated by other evidence—each and every element (amount, date, place, business purpose, and business relationship) of each and every expenditure in order to claim entertainment and travel expenses allowed under § 274 and § 162. If such substantiation is lacking, the deduction is to be disallowed entirely. Through this statute and the expected regulations, Congress did not intend to chill the legitimate and reasonable use of business entertainment and travel, recog-

nizing its function in American business. Its purpose was to eliminate as far as possible abuses of the deduction.

*Dowell v. United States*, 522 F.2d at 712–14 (footnotes omitted).

Although the defendant rejects plaintiffs' reliance on *Cohan*, defendant also argues that even if the reasonable approximation doctrine of *Cohan* was applicable in this case, plaintiffs would have been required to present sufficient evidence to allow the court to make a factual finding that each individual expense actually was incurred, a threshold test that plaintiffs have failed to meet. Thus, defendant argues that the *Cohan* rule is not applicable in the present case because plaintiff Frederick E. Speck's unsupported, and vaguely recollected, inadequate testimony of events is the only evidence placed into the record that the expenses were actually incurred. In *Rodman v. Commissioner*, 542 F.2d 845, 854 (2nd Cir.1976), the court stated that "[r]egardless of the *Cohan* rule with respect to *amounts* allowable, the courts have consistently held that at least the *existence* of an expense must be proved before any deduction can be taken." (Emphasis in original). Similarly, the court in *Dowell v. United States* stated that a deduction should be disallowed entirely if substantiation is lacking. *Dowell v. United States*, 522 F.2d at 714. That court noted the requirement to substantiate each and every element (amount, date, place, business purpose and business relationship, and each and every expenditure) either by adequate records or plaintiffs' own statements, corroborated by other evidence. *Id.*

In *L.W. Hardy Co. v. United States*, the court found that the taxpayer has the burden of proving both legal entitlement to a deduction and the actual amount of the deduction. *L.W. Hardy Co. v. United States*, 1 Cl.Ct. 465, 470 (1982). The court stated:

Deductions are a matter of legislative grace, and are only allowed upon clear proof of entitlement. *Commissioner v. National Alfalfa Dehydrating & Milling Co.*, 417 U.S. 134, 149, 94 S.Ct. 2129, 2137, 40 L.Ed.2d 717 (1974). The conse-

quence of lack of evidence on a material element of the deduction is that the taxpayer's claim is to be rejected. *Burnet v. Houston,* 283 U.S. 223, 51 S.Ct. 413, 75 L.Ed. 991 (1931). Taxpayers are obligated to keep sufficient records to establish the amount of tax owing, and thus the amount of the deduction claimed. I.R.C. § 6001; Treas.Reg. § 1.6001–1(a). In the absence of such records, entirely unsupported estimates by the taxpayer are insufficient evidence to allow taxpayer to prevail. *Keiner–Williams Stamping Co. v. United States,* 90 Ct.Cl. 203, 30 F.Supp. 807 (1940).

Records or other probative evidence in this case are so lacking that there is no room for the application of the 'best estimate' rule of *Cohan v. Commissioner,* 39 F.2d 540 (2d Cir.1930), *see Southern Railway Co. v. United States,* 218 Ct.Cl. 150, 155–56, 585 F.2d 466, 470 (1978). To accept the taxpayer's arbitrary estimates here on the basis of *Cohan* would be 'to condone the use of that doctrine as a substitute for burden of proof. This the court will not do.' *Coloman v. Commissioner,* 540 F.2d 427, 431–32 (9th Cir. 1976).

On all the evidence, it is concluded that there is wholly insufficient reliable information in the documentary evidence and credible testimony from which to calculate a reasonably accurate depletion allowance under the Code and regulations. The taxpayer's estimates and assumptions are based on guesses without supporting records. Taxpayer has failed to meet its burden of proof, and is therefore not entitled to a depletion deduction.

*L.W. Hardy Co.,* 1 Cl.Ct. at 470–71.

The court concludes that plaintiffs, Frederick E. and Linda L. Speck, have failed to meet the substantiation requirements set forth in I.R.C. section 274, which having

superseded the *Cohan* rule, is applicable in the instant case.[53] When claiming travel and entertainment expenses and other deductible business expenses under I.R.C. section 162, plaintiffs must substantiate their claims by adequate records or by sufficient evidence corroborating the taxpayer's own statement. 26 U.S.C. § 274(d). Plaintiffs in this case relied primarily on the testimony of Mr. Speck. Mrs. Speck failed to testify, or even to appear for her own trial. No other witness appeared on behalf of the plaintiffs. Plaintiffs failed to ·set forth any receipts or documents to substantiate the time, place, amount and business purpose of the deductions, as required by 26 U.S.C. § 274(d). Therefore, this court denies plaintiffs' claims for business expense deductions for the costs of travelling and entertainment.

This court notes that the bald assertion of entitlement to deductions and adjustments, unsubstantiated by testimony or evidence, on behalf of hockey player plaintiffs is not a new tactic for Mr. Abrahams. Judge Goffe, in the *Stemkowski* Tax Court case commented at length on such failures by plaintiffs' counsel. The Tax Court Judge remarked that: ·

> [t]he existence of the inconsistencies among petitioner's claims is difficult to understand in light of the fact that the same attorney [Mr. Abrahams] who tried this case for petitioner filed the first amended petition and briefs and also prepared petitioner's income tax return. We wonder what evidence he had before him when he prepared petitioner's income tax return.

Out of the 94 exhibits submitted at trial, there is only one document submitted to substantiate petitioner's deductions for off-season conditioning expenses.

---

**53.** The United States Tax Court also characterized the argument made by Mr. Abrahams that plaintiff need not produce documentary evidence to obtain business deductions under section 162 of the Internal Revenue Code as "so patently incorrect that it requires no citation of authority to the contrary." *Stemkowski v. Com-*

*missioner,* 82 T.C. 854, 867, 1984 WL 15579 (1984). Therefore, the United States Tax Court also rejected earlier attempts by Mr. Abrahams to avoid the substantiation requirement by reliance on the *Cohan* rule for other tax year than those at issue in this court.

*Stemkowski v. Commissioner,* 82 T.C. 854, 857, 859, 867, 1984 WL 15579 (1984). Unfortunately, in the *Speck* case currently before this court, Mr. Abrahams appears to have surpassed his previous performance in *Stemkowski.* Not one document has been entered into evidence which substantiates any of the deductions claimed by plaintiffs Linda L. and Frederick E. Speck.

Mr. Abrahams more recently provoked further criticism of his litigation tactics in another hockey player tax decision by the United States Tax Court. *John J. Hanna v. Commissioner,* T.C. Memo 1992–360, 63 T.C.M. (CCH) 3178, 3179, 1992 WL 141006 (1992). According to Judge Goffe in the *Hanna* case, the resolution of the case was based in large part upon the failure of plaintiff's counsel, Charles Abrahams, to adequately substantiate his claims. *Id.* Judge Goffe stated that the "dearth of substantiation" in *Hanna* was deserving of the same criticism leveled by the Tax Court in the earlier *Stemkowski* case. *Id.*

In this court, Mr. Abrahams and plaintiffs Linda L. and Frederick E. Speck once again have failed to properly substantiate their claims to deductions. Furthermore, Mr. Abrahams has continued to reassert legal theories in this court which were consistently rejected and criticized by the United States Tax Court, and which this court also rejects. Thus, it appears from a review of the record in the instant case, as well as the opinions issued by the Tax Court in the *Stemkowski* and *Hanna* cases, that Mr. Abrahams is engaged in a pattern of behavior which consists of asserting factual theories that are simply ungrounded in the record before the court, and proposing legal arguments which have no basis in law.

### The Effect of Plaintiffs' Non-Resident Alien Status

■ At the trial, plaintiff Frederick Speck testified that in 1972 he was present in the United States on a temporary visa which allowed him to stay in the United States for only six months. The allowance of deductions from the income of non-resident aliens is governed by 26 U.S.C. § 873(a) (1964),[54] which allows non-resident aliens to deduct only expenses directly related to the conduct of a trade or business within the United States. 26 U.S.C. § 873(a) states:

**(a) *General Rule***

In the case of a nonresident alien individual, the deductions shall be allowed only for purposes of section 871(b) and (except as provided by subsection (b)) only if and to the extent that they are connected with income which is effectively connected with the conduct of a trade or business *within* the United States; and the proper apportionment and allocation of the deductions for this purpose shall be determined as provided in regulations prescribed by the Secretary or his delegate.

26 U.S.C. § 873(a) (emphasis added). The exceptions to this rule, set forth in 26 U.S.C. § 873(b), allow for deductions for casualty losses related to property located within the United States and charitable contributions. Treas.Reg. § 1.873–1 specifies that deductions claimed by non-resident aliens must be related to income generated from sources within the United States and clearly states that non-resident aliens may not deduct items unconnected with income from such sources. Treas. Reg. § 1.873–1(a) states:

**Deductions allowed nonresident alien individuals**

**(a) General provisions—(1) Allocation of deductions.** In computing the taxable income of a nonresident alien individual the deductions otherwise allowable shall be allowed only if, and to the extent that, they are connected with income from sources within the United States. *No deduction shall be allowed in respect of any item, or portion thereof, which is not connected with income from such sources.*

---

**54.** The text of this provision is identical to the 1970 version of the official Code applicable to the 1971 and 1972 tax years.

Treas.Reg. § 1.873–1(a) (1968) [55] (emphasis added). Therefore, as defendant argues, non-business related personal expenses incurred in the United States or Canada are not deductible by non-resident aliens. On appeal from a case initially filed in the United States Tax Court, involving a hockey player plaintiff for whom counsel Abrahams subsequently also filed a petition in this court, the United States Court of Appeals for the Second Circuit noted that deductions are not allowed for personal expenses. *Stemkowski v. Commissioner*, 690 F.2d 40, 46–48 (2d Cir.1982),[56] *see also Commissioner v. Stidger*, 386 U.S. 287, 87 S.Ct. 1065, 18 L.Ed.2d 53 (1967); *Rombach v. United States*, 194 Ct.Cl. 530, 440 F.2d 1356 (1971).

 Therefore, expenses related to an activity other than Mr. Speck's hockey playing in the United States are not deductible by him under 26 U.S.C. § 873(a). Plaintiffs have listed on their original returns and claims for refund numerous personal expenditures, which defendant alleges were not directly related to Mr. Speck's hockey playing career, including: promotional expenses, state sales taxes, gasoline taxes, disability insurance premiums, health insurance premiums, real estate property taxes, home mortgage interest, and a large percentage of home telephone and television use, as well as losses, taxes and interest on property owned by plaintiffs in Canada. The court finds that these deductions are not available to the non-resident alien plaintiffs, since plaintiffs have failed to establish a clear nexus to the hockey playing activities of Mr. Speck. Moreover, plaintiffs have failed to substantiate any of the claimed deductions, and therefore the deductions are denied.

The items for which plaintiffs have claimed a deduction include health club costs in Burlington, Canada, real property taxes paid in Canada in the amount of $551.00, home mortgage interest in the amount of $453.00 paid to a Canadian bank for a mortgage on a house in Canada, and apparently a casualty loss on the rented property located in Canada. Testimony by the plaintiff on cross-examination clearly revealed that the home mortgage deduction was on property located in Canada. As the testimony shows, Mr. Speck testified that his attorney, Mr. Abrahams, told him that these Canadian sourced items were deductible.

BY MR. KING:

Q Did you ever have any discussion, with Mr. Abrahams, about whether a nonresident alien, could deduct home mortgage interest, on a residence in Canada, from his U.S. income tax return?

A I would assume so.

Q You would assume that there was a discussion. Do you know what the discussion was?

A I couldn't tell you, word for word, what the discussion was. But, I was probably asked, whether or not, I had bought a house, during that year. And, if I had any copy of the mortgage. That I would have had on it.

Q Was any question raised about whether you could claim, home mortgage interest, on a home in Canada, on your U.S. Income Tax Return?

A I doubt that, that probably would have been asked.

Q If you would, go down to item number 11. Under "Taxes". And there an indication for "Real Estate".

Would that be property taxes on your residence in Burlington?

A I don't know, to be honest with you. But, I would assume, that—that's what—

Q Did you own a home, in the United States, during 1972?

A No.

Q So, if it is real estate taxes, it would have to be on your residence in Ontario?

A I would assume.

---

**55.** The text of the 1968 provision is identical to the versions of the C.F.R. applicable to the 1971 and 1972 tax years.

**56.** The case in this court filed by plaintiff Stemkowski was dismissed at plaintiffs' request.

Q Was there any discussion, about the deductibility, by non-resident alien, of real estate taxes, paid in Canada, from that individual's U.S. Income Tax Return?

A I would doubt it.

Q There is an item indicated, number 15, "Personal Property Tax". Do you know who that personal property tax was paid to? Which governmental entity?

A I would assume that, that would be state taxes, of some sort. Whether it be, like a goods and service tax, of some sort, that—

Q Do they have, or did they have, personal property taxes in Canada, in 1972? Do you recall paying any Canadian province or locality?

A No. Not that I'm aware of.

\* \* \* \* \* \*

BY MR. KING:

Q Mr. Speck, you indicated that the property, for which you deducted the home mortgage interest, and the real estate property taxes, was rental property in Canada?

A It was a house that I owned. And we rented.

Q You rented it out to someone else?

A To someone else. Yes, I'm sorry.

Q And, in fact, what you were deducting, were net losses, from the rental of that property?

A Yes, sir.

Q Do you have any idea, as to why you were deducting losses from rental of property in Canada, from your United States Income Tax Return?

A Just with discussions with my attorney, at that time.

Treasury Regulations § 1.873–1 clearly renders plaintiffs' attempts to deduct interest or real estate property taxes from property in Canada impermissible.

 Additionally, non-resident aliens also are specifically prohibited from filing

joint tax returns by 26 U.S.C. § 6013(a) (1964).[57] This section states:

**Joint returns of income tax by husband and wife**

**(a) Joint returns**

A husband and wife may make a single return jointly of income taxes under subtitle A, even though one of the spouses has neither gross income nor deductions, except as provided below:

(1) no joint return shall be made if either the husband or wife at any time during the taxable year is a nonresident alien;

26 U.S.C. § 6013(a). Non-resident aliens may not use the married filing joint tax rate, and are required to file a Form 1040NR, rather than the standard Form 1040. As defendant points out, plaintiffs in this case, with Mr. Abrahams' assistance, although non-resident aliens, filed a Form 1040 joint return for 1972, therefore, availing themselves of the more favorable applicable tax rate for married couples (curiously, plaintiffs filed a 1040NR jointly for the 1968 tax year). For the 1972 tax year, plaintiff Frederick Speck specifically testified that he was in the United States on a temporary visa. Frederick Speck testified that his tax return was prepared by plaintiffs' counsel, Charles L. Abrahams, as is verified by plaintiffs' counsel's signature on the copy of the tax return and the Form 843 claim for the years 1971 and 1972 included in the record. For 1968, Frederick Speck appears to have used the Fritz Bookkeeping Tax Service. However, a facially valid power of attorney to Charles Abrahams is in the record for 1968, 1971 and 1972.

As the tax preparer for plaintiffs, and as their attorney in these proceedings, Charles Abrahams, was aware, or should have been aware, that plaintiffs were non-resident aliens, and realized, or should have realized, that non-resident aliens are required to file a Form 1040NR. In particular, plaintiffs' 1972 return was clearly prepared using a Form 1040, with incorrect informa-

---

**57.** The text of this provision is identical to the 1970 version of the official Code applicable to the 1971 and 1972 tax years.

tion and using the wrong tax rate schedule. Since it appears from the record that plaintiffs were not entitled to file a joint return, their tax liability must be recalculated, using the higher married filing separate tax rates. Defendant, therefore, suggests that plaintiffs substantially underreported at least the tax they owed in 1972, and that the government is entitled to offset any amounts which might have been achieved by plaintiffs' use of the incorrect tax rate.

### Team City Living Expenses

Plaintiffs, in their petition filed with this court, assert a claim for $3,754.00 in "team city expenses" for the 1968 tax year; $2,772.00 for the 1971 tax year and $3,360.00 for the 1972 tax year.[58] Plaintiffs assert that a citizen of a foreign country, who is temporarily in the United States in the pursuit of business, and maintains the intention of returning to the foreign country may deduct expenses incurred while away from home. Plaintiffs state that "[b]y definition, the holder of a temporary visa has temporary employment for purposes of the away-from-home expense deduction under section 162 of the Code." Plaintiff further argues that because of the temporary nature of Mr. Speck's visa, pursuant to which he was required to return to Canada following the hockey season, Mr. Speck's employment was only temporary and, thus, this court should allow deductions for his "team city" expenses under 26 U.S.C. § 162.

A review of plaintiffs' joint Form 1040 and Frederick Speck's individually filed Form 843 claim for the 1968 tax year does not explain how the plaintiff arrived at the figure claimed for 1968. Plaintiffs' claims for the 1971 and 1972 tax years, however, correspond to specific requests for refund as set forth in their applicable Form 843 claims for 1971 and 1972. For the 1971 tax year, plaintiff, Frederick Speck filed an individual Form 843 claim for: "[u]n-reimbursed 'away from home' expenses for 77 days and nights in United States at team city" in the amount of $2,772.00. Similarly, for the 1972 tax year, plaintiffs Frederick and Linda Speck jointly filed a Form 843 claim for $3,360.00 in expenses for "[u]n-reimbursed 'away from home' expenses for 120 days and nights at team city." The expenses claimed by plaintiffs also include those for personal living expenses such as rent, laundry, furniture rental, meals, food, sales taxes, gas, transportation, and utilities.

When a taxpayer is required by his/her employer to be "away from home in pursuit of a trade or business," the taxpayer may deduct his/her "ordinary and necessary" expenses "paid or incurred" under 26 U.S.C. § 162(a), if the taxpayer meets the requirements of Treas.Reg. § 1.274–5(b), (c). The business travel expenses, however, are considered deductible only if required by the "exigencies of business" and "when the taxpayer's employment is 'temporary,' as contrasted with 'indefinite' or indeterminate, *Peurifoy v. Commissioner*, 358 U.S. 59, 60, 79 S.Ct. 104, 105, 3 L.Ed.2d 30 (1958).

Defendant, however, properly argues that employment may not properly be characterized as temporary, if there is a "reasonable probability" that the taxpayer might be employed for an indefinite period of time, and that the test of whether a job is indefinite or temporary is based on the particular facts and circumstances of each case. *See Davis v. United States*, 861 F.2d 558, 564 n. 1 (9th Cir.1988), *aff'd*, 495 U.S. 472, 110 S.Ct. 2014, 109 L.Ed.2d 457 (1990); *Harvey v. Commissioner*, 283 F.2d 491, 495 (9th Cir.1960). The subjective intent of the taxpayer is not controlling in determining whether an assignment to a particular location is temporary. *See Markey v. Commissioner*, 490 F.2d 1249, 1253 (6th

---

**58.** In plaintiffs' petition, plaintiffs' counsel, Charles Abrahams, states:

The Commissioner erred through his acquiescence in the action of the Audit and Appellate Divisions and the National Office of the IRS which refused to consider and, therefore, implicitly disallowed certain 'away from home' expenses incurred by Plaintiff in the city in which the hockey team which employs him is located. Such 'team city expenses' are ordinary and necessary business expenses incurred 'away from home' in the amount of $3,754.00, $2,772.00, and $3,360.00 for the three years, respectively.

Cir.1974). Defendant asserts that a rebuttable presumption is created that the employment is indefinite, and not temporary, if the employment could be expected to last a year or more. Rev.Rul. 83–82, 1983–1 C.B. 45.

The court in *Commissioner v. Mooneyhan* offered a succinct explanation of the "away from home" issue as follows:

By providing this deduction [a deduction for 'away from home' expenses pursuant to I.R.C. § 162], Congress intended to help the taxpayer whose employment demands that he travel. *Harvey v. Commissioner of Internal Revenue*, 283 F.2d 491 (9th Cir.1960). This taxpayer normally maintains two homes—his business residence and his usual place of abode. If he travels away for short periods of time, Congress recognized that it is not reasonable to expect him to carry his home with him; as a result, he may deduct his traveling expenses, including those incurred for meals and lodging. On the other hand, if his or his employer's business requires that he remain at another location for longer periods of time he will, under the scheme of our tax law, be expected to take his home with him. Expenses for meals and lodging here are not deductible since they are not incurred 'while away from home.' *See Harvey v. Commissioner of Internal Revenue*, 283 F.2d 491 (9th Cir.1960); *Wright v. Hartsell*, 305 F.2d 221 (9th Cir.1962).

The Courts, however, have had some difficulty with the phrase 'while away from home' since Congress never defined it. The Commissioner and the Courts generally agree that if a taxpayer is away only 'temporarily' on business he is considered to be 'away from home' within the meaning of the statute and may deduct his expenses. *See e.g., Burns v. Gray*, 287 F.2d 698 (6th Cir.1961). But if the taxpayer is away 'permanently,' a term that presents no real problem, or 'indefinitely,' a term that does since it begs definition, his tax home shifts to his principal place of employment and he may not deduct his expenses. *England v. United States*, 345 F.2d 414 (7th Cir.

1965); *Cockrell v. Commissioner of Internal Revenue*, 321 F.2d 504 (8th Cir.1963). This concept of tax home has received the tacit approval of the Supreme Court. *Commissioner of Internal Revenue v. Stidger*, 386 U.S. 287, 87 S.Ct. 1065, 18 L.Ed.2d 53 (1967); *United States v. Correll*, 389 U.S. 299, 88 S.Ct. 445, 19 L.Ed.2d 537 (1967).

*Commissioner v. Mooneyhan*, 404 F.2d 522, 527–28 (6th Cir.1968); *see also Harvey v. Commissioner*, 283 F.2d at 495.

Plaintiffs suggest that Mr. Speck's employment was temporary because, due to the nature of his job, he was subject to being traded to another hockey team, and, actually, during his career was traded several times. At trial, Mr. Speck testified, however, that when he played for a team, he expected to play for that team for at least one year. Indeed, the record reflects that Mr. Speck stated, "I went to training camp with one intent. To make a team and, hopefully, remain there for the year." Defendant contends that the employment of a professional hockey player is not made temporary due to the fact that he might be traded by his employer to another team at some time in the future. Moreover, in the instant case, plaintiff Frederick Speck left his home in Canada and came to this country with the expectation of an extended opportunity to play hockey for the team with which he had signed. The deductions at issue claimed by plaintiffs as "team city" expenses are those for expenses he incurred while away from his residence in Canada and located in the team's home base city, which plaintiffs' counsel argues was for a temporary period of time since he was always subject to being traded. These deductions do not appear to be for "road expenses" while training for or playing for the team which he was in fact playing at the time.

Moreover, this court agrees with the reasoning of the United States Tax Court, upheld by two separate United States circuit courts of appeals, which, although not binding on this court, are certainly persuasive, especially since they addressed very similar fact patterns to the one at bar.

Those appellate courts held that the plaintiff's employment with the team was not temporary, regardless of the possibility that the athlete might be traded. *See Bailey v. Commissioner,* ¶ 84,610, P–H Memo TC at 2481 (1984); *Stemkowski v. Commissioner,* 690 F.2d at 48–49; *Hanna v. Commissioner,* 763 F.2d at 172. *See also Commissioner v. Stidger,* 386 U.S. at 296, 87 S.Ct. at 1071 ("a military taxpayer is not 'away from home' when he is at his permanent duty station ...").

### Allocation of Income between the United States and Canada

In the petition which initiated the case before this court, plaintiffs allege that:

The Commissioner erred in refusing to exclude from the gross income of the Plaintiff, certain foreign income claimed in accordance with the provisions of IRC secs. 861(a)(3) and 862(a)(3), and in accordance with the Treasury Regulations Sec. 1.861–4(b) in the amount of $3,309.00, $3,361.00, and $–0– for the three years, respectively. Plaintiff's contract of employment requires the performance of the personal services for which he is compensated by his employer partly within and partly outside the United States. Since an accurate method for allocating or segregating his compensation for personal services performed in the United States cannot be made, the only authorized method of allocation is on a time basis pursuant to Treasury Regulations Sec. 1.861–4(b)....

The claim for adjustment in plaintiff's tax liability of $3,309.00, as a result of the exclusion of Canadian foreign source income from gross income, was included in plaintiff Frederick Speck's separately filed Form 843 claim for the 1968 tax year. For the 1971 tax year, again in a Form 843 claim, plaintiff, Frederick Speck, filing alone, requested a similar adjustment in the amount of $3,361.00.

When labor or service is performed partly within and partly without the United States, the amount included in the gross income for United States tax returns is to be determined on an apportionment basis. Treas.Reg. § 1.861–4(b) sets forth the applicable rule:

*Amount includable in gross income.*

If a specific amount is paid for labor or personal services performed in the United States, that amount (if income from sources within the United States) shall be included in the gross income. If no accurate allocation or segregation of compensation for labor or personal services performed in the United States can be made, or when such labor or service is performed partly within and partly without the United States, the amount to be included in the gross income shall be determined by an apportionment on the time basis; that is, there shall be included in the gross income an amount which bears the same relation to the total compensation as the number of days of performance of the labor or services within the United States bears to the total number of days of performance of labor or services for which the payment is made.

Treas.Reg. § 1.861–4(b) (1968).[59]

In its disposition of the parties' cross-motions for summary judgment, this court fully discussed the allocation of income issue raised by the parties. Although the parties agreed that players performed off-season activities which might have been beneficial to the various clubs, and even that some of the clubs exerted some guidance over these training activities, nowhere in the contracts are specific off-season obligations assigned to the players. *Favell v. United States,* 16 Cl.Ct. 700 (1989), *appeal denied,* 22 Cl.Ct. 132 (1990), *mandamus denied,* 949 F.2d 402 (Fed.Cir.1991). When deciding the cross motions for partial summary judgment, this court concluded that conditioning programs, fitness exercises and similar activities, engaged in by the hockey players during the off-season, outside the United States, are properly characterized as contractual conditions of employ-

---

**59.** The text of the 1968 provision is identical to the versions of the C.F.R. applicable to the 1971 and 1972 tax years.

ment, rather than labor or services required to be performed in fulfillment of the Standard Player's Contracts. Indeed, under the terms of the hockey player contract, it was a requirement to report to training camp in good physical condition. *See Stemkowski v. Commissioner,* 76 T.C. 252 (1981), *aff'd in part, rev'd in part, and remanded,* 690 F.2d 40 (2d Cir.1982) and *Hanna v. Commissioner,* 76 T.C. 252 (1981), *aff'd in part, rev'd in part, and remanded,* 763 F.2d 171 (4th Cir.1985) (the United States Court of Appeals for the Fourth Circuit essentially adopted the reasoning of the Second Circuit). *Hanna v. Commissioner,* 763 F.2d at 172. Unlike the United States Tax Court, however, when it decided the *Stemkowski* and *Hanna* cases, when this court ruled on the motion for partial summary judgment, the opinion addressed only the legal income allocation issue. The validity of specific deductions were not the subject of this court's decision on the motions for partial summary judgment, but were specifically deferred for trial.

■ During the trial of the instant case, plaintiffs have failed to establish the specific number of days for which Mr. Speck was compensated, in one jurisdiction or other, and the specific number of days during which plaintiffs were present in the United States. Without any evidence of how many days were spent in Canada and how many were spent in the United States, this court has no information by which it may determine, with accuracy, the portion of income subject to United States tax. Because the plaintiffs have failed to provide any such evidence, all compensation should be included in United States gross income, pursuant to Treas.Reg. § 1.861–4(a) & (b).

*Conduct of Plaintiffs and Their Counsel*

■ The clear errors on plaintiffs' part regarding the lack of substantiation for the deductions claimed and the incorrect entries on the tax returns, Form 843 claims and filings before this court, render plaintiffs' tax returns, other filings with the I.R.S. and with this court, as well as plaintiffs' claims for refund, unreliable and suspect.

Although throughout his testimony, plaintiff Frederick Speck stated his ignorance of the requirements for substantiation and other fine points of the tax law, plaintiffs chose to retain Mr. Abrahams as counsel. In the instant case, it appears that plaintiffs' counsel also acted as the tax advisor and preparer for the plaintiffs:

BY MR. KING:

Q Who prepared your 1972 tax return?

A Mr. Charles Abrahams.

Q Prior to the preparation of your 1972 tax return. Did you meet with Mr. Abrahams, or discuss with him, the return?

A Yes, sir.

Q Do you recall, or do you know, if Mr. Abrahams was aware of the fact, that you were a citizen of Canada?

A Yes, sir.

Q And that, he was aware of the fact, that you were present in the United States, on an H1 or H2 visa?

A I would assume so.

Q Was there any discussion, in your meetings with Mr. Abrahams, or your discussions with Mr. Abrahams, before the filing of this 1972 tax return.

About whether or not a non-resident alien, could file a joint return?

A No, sir.

Q Would you look at page 56. And, if you could look at it very quickly.

As far as you can recall, is this a copy of the 1972 tax return that would have been filed? U.S. Income Tax Return?

A Yes, sir. I assume so.

Q Would you look down at the box. Under the name. That says, "Filing Status".

A Yes.

Q And which filing status was used?

A Married. Filing joint return.

Q If you would please, look through the document. Which ends on page 63. Starting with page 56. Going through page 63.

Would you look, and indicate, if there is anything, on those pages, which indi-

cate that you were a citizen of the country of Canada, in 1972?

A You want me to find whether, or not, there is anything on these pages, that says I am a Canadian citizen?

Q Yes.

(Pause.)

MR. ABRAHAMS: Again, Your Honor, I would object to the relevance.

THE COURT: I will allow the question. Construes [sic] to the question, of whether the proper return had been filed or not.

THE WITNESS: No, sir.

BY MR. KING:

Q If you would go to page 58, in the W2 forms. The one from the Cleveland Holding Corporation and the Midwest Saints.

Can you explain, why there is no address, for you?

A It may be a case, that during that—those two particular years, they couldn't even find me. No, I can't.

Q Do you know if there was an address on the W2 forms, that you received from Cleveland, or the Midwest Saints?

A No, sir, I don't honestly know.

Q If we would, go over to page 59, of Joint Exhibit 4. There is an item under "Interest Expense". "Home Mortgage", $453.

What was that for?

THE COURT: I am sorry. What line?

MR. KING: It would be line 22.

THE COURT: Okay.

THE WITNESS: I had purchased a home, in Burlington.

THE COURT: Burlington is in Canada?

 Despite the protestations by plaintiff Frederick Speck of his lay status, it is well settled that a person is bound by the consequences of the conduct of his or her counsel, including both the acts and omissions of counsel. *Romala Corp. v. United States*, 927 F.2d 1219, 1225 (Fed.Cir.1991); *Whitaker v. Merit Sys. Protection Bd.*, 784 F.2d 1109, 1110 (Fed.Cir.1986). *See also Huston v. Ladner*, 973 F.2d 1564, 1567 (Fed.Cir.1992). Furthermore, the retaining of counsel in no way relieves a party of personal responsibility for omissions by counsel, such as delay in the submission of a timely filing. *Kathleen Sheeran v. Merit Sys. Protection Bd.*, 746 F.2d 806, 807 (Fed.Cir.1984); *see also Massingale v. Merit Sys. Protection Bd.*, 736 F.2d 1521, 1523 (Fed.Cir.1984). The United States Supreme Court has directly addressed this issue, as follows:

> Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.' *Smith v. Ayer*, 101 U.S. [ (11 Otto) ] 320, 326 [25 L.Ed. 955 (1879) ].

*Link v. Wabash R.R.*, 370 U.S. 626, 633–34, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962). In a footnote to *Link v. Wabash R.R.*, the United States Supreme Court stated:

> Surely if a criminal defendant may be convicted because he did not have the presence of mind to repudiate his attorney's conduct in the course of a trial, a civil plaintiff may be deprived of his claim if he failed to see to it that his lawyer acted with dispatch in the prosecution of his lawsuit. And if an attorney's conduct falls substantially below what is reasonable under the circumstances, the client's remedy is against the attorney in a suit for malpractice.

*Id.* at 634 n. 10, 82 S.Ct. at 1390 n. 10. This notion is a basic principle of the adversarial system and has been applied in a variety of contexts to the effect that: "it considers the principal as affected with notice of all facts, notice of which can be charged upon the attorney." *Smith v. Ayer*, 101 U.S. (11 Otto) 320, 326, 25 L.Ed. 955 (1879).

 A succinct articulation of the rule of charging the conduct of the attorney to his or her client(s) can be found in the opinion of United States Court of Appeals for the Seventh Circuit in *Anderson v.*

*United Parcel Serv.*, 915 F.2d 313 (7th Cir.1990), which adopted the axiom that the "client picks the attorney and should be bound by that choice." *Id.* at 316 (citing *Link v. Wabash*, 370 U.S. 626, 633–34, 82 S.Ct. 1386, 1390–91, 8 L.Ed.2d 734 (1962)). The Seventh Circuit also dismissed a plaintiff's arguments that the sins of the attorney should not be visited upon the client. *Id.* at 315. Furthermore, lack of awareness by the client of his or her attorney's malfeasance is no excuse. As stated in *United States v. DiMucci*, 879 F.2d 1488 (7th Cir.1989), notice to a party's attorney constitutes notice to that party. *Id.* at 1495 (citing *Link v. Wabash R.R.*, 370 U.S. 626, 633–34, 82 S.Ct. 1386, 1390–91, 8 L.Ed.2d 734). The basis for this approach has been clearly explained in *Tolliver v. Northrop Corp.*, in which the court stated:

> Although [the plaintiff] blames her lawyer for the failure, a litigant is bound by his lawyer's acts.... Holding the client responsible for the lawyer's deeds ensures that both clients and lawyers take care to comply. If the lawyer's neglect protected the client from ill consequences, neglect would become all too common.

786 F.2d 316, 319 (7th Cir.1986) (citations omitted). *But see Beeson v. Smith*, 893 F.2d 930, 931 (7th Cir.1990) (dismissal with prejudice for failure to prosecute was abuse of discretion, the more appropriate remedy being sanctions against the attorney).

### Failure of Plaintiff Linda L. Speck to Appear at the Trial

■ Counsel for Plaintiffs, Charles Abrahams, without explanation, and without advance notice to the defendant or to the court, failed to call plaintiff Linda L. Speck as a witness at the trial in the above-captioned case, although she was listed on the pretrial witness lists by plaintiffs' counsel. It has long been held that "the unexplained failure to call any known non-hostile person who has direct knowledge of facts being developed by the party raises the inference that the testimony would be unfavorable, or at least would not support the case." *Borror v. Herz*, 666 F.2d 569, 574 (C.C.P.A.1981) (citing 2 Wigmore, *Evidence*, § 290(4)); *see also Culbertson v. The Steamer Southern Belle*, 59 U.S. (18 How.) 584, 588, 15 L.Ed. 493 (1855); *Linkow v. Linkow*, 517 F.2d 1370, 1374 (C.C.P.A.1975); *Barnett v. United States*, 6 Cl.Ct. 631, 671 (1984).

■ An additional requirement has been imposed in order to justify such an inference, the testimony of the uncalled witness should not be cumulative or inferior to the evidence already presented. *Kean v. Commissioner*, 469 F.2d 1183, 1188 (9th Cir.1972) (citing *Georgia Southern & Florida R.R. Co. v. Perry*, 326 F.2d 921, 925 (5th Cir.1964); 2 Wigmore, *Evidence*, § 287, p. 168 (3rd Ed.1940)). Clearly, the testimony of Linda Speck in the case at bar would not have been cumulative or inferior to the testimony offered. Indeed, in light of the complete lack of documentary or credible testimonial evidence adduced by plaintiffs' in the above-captioned case, any testimony by plaintiff Linda Speck would have supplemented that currently in the record. Or, stated otherwise, it is difficult to imagine testimony in support of plaintiffs' case inferior to that already in the record.

■ The fact that Linda Speck is a litigant in the instant case, and, nonetheless, failed to appear at trial, creates a further inference that any testimony from plaintiff Linda Speck would have been unfavorable, or simply unhelpful to plaintiffs' case. *Barnett v. United States*, 319 F.2d 340, 344 (8th Cir.1963); *United States v. Fields*, 102 F.2d 535, 537–38 (8th Cir.1939). *See* 2 Wigmore *Evidence* § 289 (Chadbourne Rev.1979 & Supp.1991). The United States Court of Appeals for the 8th Circuit, explicitly stated:

> Although the appellee was present at the trial, he did not take the stand in his own behalf. The rule is that: 'The non-appearance of a litigant at the trial or his failure to testify as to facts material to his case and as to which he has especially full knowledge creates an inference that he restrained from appearing or testifying because the truth, if made to appear,

would not aid his contention.' 22 C.J. Section 57, p. 121.

*Fields* at 537–38. Moreover, the standard set forth by the circuit court in *Fields* also was explicitly adopted by the court in *Barnett v. United States*, 6 Cl.Ct. 631, 671 (1984). The inferences drawn from the failure of a witness to testify are especially applicable when the witness is a party. 6 Cl.Ct. at 671 (citing *United States v. Fields*, 102 F.2d 535, 537–38 (8th Cir.1939); *Barnett v. United States*, 319 F.2d 340, 344 (8th Cir.1963)). Therefore, upon careful review of the record in the case at bar, this court draws the clearly permissible inference that any testimony which might have been offered by plaintiff Linda Speck would have failed to augment the otherwise woefully inadequate quantum of evidence offered by plaintiffs to support their claims.

### Defendant's Offset Claims

In defendant's "Second Amended Answer and Offset," filed with the court in August 1991 and "Defendant's Post–Trial Memorandum" filed with the court on August 2, 1991, defendant asserts that plaintiffs owe tax in addition to the income tax that plaintiffs reported on their original returns for tax years 1968, 1971 and 1972. Defendant, therefore, argues that the government is entitled to offset any possible deficiencies found by this court for the tax years at issue against any refunds plaintiffs might be entitled to receive. Defendant further argues that "plaintiffs have the burden of proving that they have overpaid their taxes not only with respect to the items raised in the claim for refund, but also with respect to the items raised in the offset asserted by the government." Defendant cites to *Missouri Pac. R.R. Co. v. United States*, 168 Ct.Cl. 86, 90–92, 338 F.2d 668, 671 (1964) and *Ahmanson Found. v. United States*, 674 F.2d 761, 776–78 (9th Cir.1981), for support.

Plaintiffs, however, object to the government's assertion that it is entitled to offsets. Plaintiffs argue that, based on *Missouri Pac. R.R. v. United States*, 168 Ct. Cl. at 86, 338 F.2d at 672, and *Ahmanson Found. v. United States*, 674 F.2d at 761,

the government has the initial burden of showing that there is a reasonable basis in fact or law to assert a defense of offset. Plaintiffs continue to contend that the government has no reason to assert an offset, given the application of *Cohan v. Commissioner*, 39 F.2d 540, despite the court's earlier indications to plaintiffs' counsel that *Cohan v. Commissioner* does not control in the case at bar. Furthermore, plaintiff maintains that discovery was taken in this case in 1977 and 1978, and that the government has not carried its burden because it did not raise the offsets until its second amended answer. Among other difficulties with plaintiffs' argument, however, is that the defendant's failure to assert all applicable defenses until late in the proceeding is in part attributable to the dilatory manner in which plaintiffs' counsel has thwarted the court's discovery and pretrial orders in this case. Furthermore, defendant was unaware of plaintiffs' Canadian domiciliary status until pretrial documents had been exchanged and testimony had been received at the trial.

The government must bring any affirmative action to assess tax liability within three years after a tax return is filed. 26 U.S.C. § 6501 (1988). Admittedly, in the present case, defendant asserts the defense of offset more than ten years after the plaintiffs filed their claims for refund. Nonetheless, in *Doko Farms v. United States*, 956 F.2d 1136 (Fed.Cir.1992), the United States Court of Appeals for the Federal Circuit recognized the prerogative of the government to assert offsets against other claims brought by a taxpayer even after the statute of limitations had passed. The court stated: "[c]ourts have recognized and held that the fact that the statute of limitations bars a government suit to collect an amount due to it does not bar the government from invoking its administrative remedies to offset the indebtedness against other claims by the debtor." *Doko Farms v. United States*, 956 F.2d at 1140. The *Doko Farms* decision follows the decision in *Lewis v. Reynolds* in which the United States Supreme Court held that "[a]lthough the statute of limitations may

have barred the assessment and collection of any additional sum, it does not obliterate the right of the United States to retain payments already received when they do not exceed the amount which might have been properly assessed and demanded." *Lewis v. Reynolds*, 284 U.S. 281, 283, 52 S.Ct. 145, 146, 76 L.Ed. 293 (1932); *see also McLennan v. United States*, 23 Cl.Ct. 99, 105 (1991).

By filing the action presently before this court, plaintiffs have put in question their overall tax liability for the years 1968, 1971 and 1972. As stated by the Court of Claims:

> In other words, the taxpayer has the burden of proving the exact dollar amount to which he is entitled. *See Helvering v. Taylor*, 293 U.S. 507 [55 S.Ct. 287, 79 L.Ed. 623] (1935). This of necessity puts in issue every credit or deduction found in the particular tax return for which refund is sought on in a related tax return. However, this does not involve a redetermination of taxpayer's tax liability under unrelated tax returns for that year. We view the taxpayer's tax liabilities as a series of obligations arising from each tax imposed. Thus, when the government by way of a setoff challenges the validity of the tax treatment accorded an item found in the same tax return or in a related and dependent tax return (situations (1) and (2) outlined above), we think that the burden of proving the correctness of the challenged item is ultimately on the taxpayer. When the challenged item is found in an unrelated tax return (situations (3) and (4)), we think that the burden of proof remains on the government throughout the entire proceedings.

*Missouri Pac. R.R. v. United States*, 168 Ct.Cl. at 90–91; 338 F.2d at 671.

■ The government, however, must prove that there is a reasonable basis in fact or in law for its offset defense before plaintiff must carry its burden of proving the correctness for the deductions claimed. *Missouri Pac. R.R.*, 168 Ct.Cl. at 91, 338 F.2d at 671. The United States Court of Claims wrote:

> [T]he government has to demonstrate that it has some concrete and positive evidence, as opposed to a mere theoretical argument, that there is some substance to its claim and is not a mere fishing expedition or a method of discouraging taxpayers from seeking refunds on meritorious claims because of the cost that would result in proving each and every item involved in a tax return. In a case where the taxpayer raises specific issues as to a tax, and there is no good reason for the government to challenge the remainder of the items going to make up the tax, the government should not be able to cast the burden on the taxpayer of proving each and every item. The right of allowing an offset under these situations is an equitable right given to the government based on the equitable principles and, as such, should not be abused. If properly used, it should provide the government with a 'shield' to prevent the unjust enrichment of a taxpayer, but if used as a 'sword' it would under certain circumstances have the contrary effect.

*Id.*

Defendant claims that plaintiffs' increased tax liability and the government's subsequent entitlement to offsets in the above-captioned case for the years 1968, 1971, 1972 arises from two factors: (1) plaintiffs did not prove that they are legally entitled to deduct the expenditures listed on their original tax returns, as filed, for 1968, 1971 and 1972, and (2) plaintiffs filed joint returns and used the married filing joint tax rate to calculate their tax, although as non-resident aliens, they were not allowed to file a joint return, pursuant to 26 U.S.C. § 6013(a)(3). Defendant contends that the disallowance of the deductions claimed on plaintiffs' original returns and the recalculation of the taxes owed causes an increase of $238.20 for tax year 1968, an increase of $901.73 in their 1971 tax liability, and an increase of $5,206.35 in their 1972 tax liability, using the higher married filing separate tax rates. In the instant case, following the trial, it is clear, however, that because plaintiffs failed to substantiate any of the refunds claimed

 

and, therefore, are entitled to no recovery, the government's claim to the offsets need not be addressed by this court. *See Lewis v. Reynolds,* 284 U.S. at 283, 52 S.Ct. at 146.

### CONCLUSION

After a thorough review of the pleadings filed with this court, and the testimony offered at trial, this court finds that plaintiffs have failed to come forward with sufficient evidence to substantiate alleged deductions for business related expenses or charitable contributions for the tax years 1968, 1971 and 1972. Plaintiffs have also failed to set forth sufficient evidence of the number of days for which Frederick Speck was compensated and the portion of such compensation properly sourced in Canada for the tax years 1968, 1971 and 1972. This court further holds that plaintiffs' claim for deduction arising from "Team City" living expenses must be denied.

Although the court has denied plaintiffs' recovery of the deductions claimed in the petition filed with the court, the case, nevertheless, remains as an open case on the docket pending the court's ruling on defendant's request for attorney's fees, costs and sanctions pursuant to Rules 11 and 16(f) of this court.

The court is cognizant, however, that plaintiffs Linda L. and Frederick E. Speck might want to appeal this court's disposition of the merits of their claims before the pending request for attorney's fees, costs and sanctions is resolved by the court. Therefore, pursuant to 28 U.S.C. § 1292(d)(2), this court, hereby, authorizes an interlocutory appeal of the substantive issues decided by this court, by which the plaintiffs Speck have been denied recovery. If the plaintiffs choose to file an appeal from this opinion, they are urged to do so in the near future so that this opinion may be referred to by all the parties in future related hockey player tax refund cases regarding the court's position on any common legal issues.

For the reasons discussed above, following lengthy pretrial proceedings and the trial in the above-captioned case, the court,

hereby DENIES plaintiffs' claims for refund for the tax years 1968, 1971, and 1972.

**IT IS SO ORDERED.**